## SPARROW *vs.* KINGMAN.

In ejectment for dower against a grantee of the husband by *quit claim deed*, **or a** person holding under such grantee, the defendant is not estopped from shewing that the husband was not seized of such an estate in the premises as to entitle his widow to dower.

The cases of *Sherwood* vs. *Vandenburgh,* (2 *Hill* 303,) *Bowne* vs. *Potter,* (17 *Wend* 164,) and other similar cases in the Supreme Court, considered, and in this respect overruled.

Error from the Supreme Court. Elizabeth Kingman brought ejectment in the Common Pleas of Erie County, against Erastus Sparrow to recover an undivided sixth part of certain premises as the widow of George G. Kingman, deceased. After issue joined, the cause was removed by *certiorari* into the Supreme Court, and was tried at the Erie Circuit, before DAYTON, Circuit Judge, in January, 1846. On the trial, the marriage of the plaintiff, and the death of her husband, were admitted.

The plaintiff proved that her husband, George G. Kingman, and Philo Durfee, were in possession of the premises from 1837 to 1840 inclusive, claiming as owners, and built certain mills thereon called the "Erie Mills;" that in February, 1841, Kingman gave a quit claim deed of his interest in the premises to S. J. Holley, and that in August, 1841, Durfee also gave a quit claim deed of his interest in the premises, (declared in the deed to be an undivided half) to the defendant. That in April, 1842, the defendant and Holley united in a quit claim deed of the premises to Ira B. Carey, and that the defendant, at the commencement of the suit, was in possession under a lease from Carey. The defendant offered to shew that Kingman never had any estate in the premises of which his wife was dowable, but that his estate was a leasehold estate merely; also that he never had any title whatever to the premises. The evidence so offered was objected to by the plaintiff, and excluded by the Circuit Judge on the ground, that as Kingman, when in possession, had, by his deed to Holley, assumed to convey a fee, and as the defend-

ant held under that deed, he, the defendant, was bound by it, and was estopped from setting up that Kingman had not an estate of which his wife was dowable. The defendant excepted. A verdict was had for the plaintiff, and the defendant, upon bill of exceptions, moved in the Supreme Court for a new trial, which motion was denied, and judgment rendered for the plaintiff. The defendant brings error.

*H. S. Dodge,* for plaintiff in error.

I. The Circuit Judge erred in excluding the evidence offered to show that Kingman never had any estate in the premises.

1. The acceptance by Holley of Kingman s quit-claim deed-poll to him, did not estop him, or those claiming under him, from showing that Kingman had no title. An estoppel by acceptance of possession is only in pais, and therefore only applies to a lessee or other grantee, who is under obligation to restore the possession. (*Co. Littleton,* 352, *a ; Watkins* vs. *Holman,* 16 *Peters,* 25 ; *Small* vs. *Proctor,* 15 *Mass, R.* 499 *; Osterhout* vs. *Shoemaker,* 3 *Hill,* 518.)

2. There can be no estoppel for want of mutuality ; Kingman himself would not have been estopped by his quit-claim deed from showing that no title passed by it. (*Jackson* vs. *Hubbell,* 1 *Cowen.* 616 *; Jackson* vs. *Bradford,* 4 *Wend.,* 622 ; *Jackson* vs. *Waldron,* 13 *Wend.,* 178.)

3. His widow would not be estopped, even if he had covenanted, and therefore she cannot estop the grantee. (2 *Smith's Leading Cases, p.* 438 ; *Jewell* vs. *Harrington,* 19 *Wend.,* 471 ; *Gaunt* vs. *Wainman,* 3 *Bing., N. C.* 69.)

II. The Circuit Judge erred in excluding the evidence offered to shew that Kingman had an estate for years, or some other estate not of inheritance.

1. The cases relied upon on the other side, were cases where the offers were to shew *no title* in the husband, not to

shew a *less estate*, and if they are conceded to be law, they do not determine this question.

**2.** There is no estoppel where an interest passes; in other words, it may always be shewn that a less estate passed than the estate mentioned in the deed, although it be an indenture. (*Treport's Case*, 6 *Rep.* 146; 2. *William's Saunder's* 418 *note* 1; 2 *Smith's Leading Cases* 438, 457).

III. But the foundation of the argument to prove an estoppel, i. e. in the words of the Circuit Judge, that "by the deed to Holley, Kingman *assumed to convey a fee,*" wholly fails in the present case.

**1.** The deed is a mere quit claim and release, and therefore only purports to convey the right that the grantor had, and for that reason never could operate as an estoppel. (*Right* vs. *Bucknell*, 2 *B. and Ald.* 278.) At most, the deed merely affirms that Kingman was entitled to a fee, *or some other estate*, and there could be no estoppel from such an uncertain recital if it had been made expressly. (*Right* vs. *Bucknell, ubi supra.*)

**2.** If there ever were any doubt of this point, there can be none since the provisions of the Revised Statutes. (1 *R. S.* 738, 739, §§ 136, 140, 142, 143, 144, 145; *also,* 1 *R. S.* 748, § 1, 2).

**3.** The deed, therefore, from Kingman to Holley, was intended and assumed to pass whatever estate and interest Kingman had without defining it, and must be read as if it had expressly so stated its object.

*N. Hill, Jr.,* for defendant in error.

I. The actual possession and use of the premises by the plaintiff's husband, claiming to be owner, and building the "Erie Mill's" thereon, proved such an estate in the husband as entitles her to dower. (*Bowne* vs. *Potter*, 17 Wend. 164; *Carpenter* vs. *Weeks,* 2 *Hill,* 341; *Sherwood* vs. *Vandenburgh, do.* 303; *Jackson* vs. *Walter*, 5 *Cow.* 301.)

II. The Circuit Judge correctly ruled that the defendant

was estopped from denying the title of Kingman, the plaintiff's husband, inasmuch as he was in possession of the whole estate under the deed from Kingman, and held by the same title that Kingman did. (*Hitchcock* vs. *Harrington*, 6 *Johns.* 290 ; *Collins* vs. *Torrey*, 7 *do.* 278 ; *Hitchcock* vs. *Carpenter*, 9 *do.* 344 ; *Davis* vs. *Darrow*, 12 *Wend.* 65 ; *Bowne* vs. *Potter*, 17 *Wend.* 164 ; *Sherwood* vs. *Vandenburgh*, 2 *Hill* 303.)

WRIGHT, J. On the trial, at the Circuit, the marriage of the plaintiff below with George G. Kingman, and the death of the latter, were admitted; and when the plaintiff rested her cause, she had *prima facie* established a seizin in fee of her husband, in his lifetime, in the lands from which dower was demanded. For this purpose, it was sufficient to shew his actual possession of the premises, claiming as owner. This is presumptive evidence of seizin, and sufficient until the contrary appears. (2 *Philips evidence* 282 ; 2 *John R.* 123, 5 *Cowen* 301.) But she went further, shewing a quit claim or release of the premises from her husband to S. J. Holley, and from Holley and others by successive releases to the landlord of the defendant. To rebut the presumption of seizin, arising from this evidence, the defendant offered to shew affirmatively that Kingman never had any title to the premises, or that, at most, he had but a leasehold estate, of which his wife was not dowable. The Circuit Judge rejected this evidence, and decided that as Kingman, when in possession, had by his deed to Holley, *assumed to convey a fee*, and as the defendant held under that deed he was bound by it, and was estopped from setting up that Kingman had not an estate of which his wife was dowable, and that upon the evidence given, the plaintiff was entitled to a verdict.

I am of opinion that it will be difficult to rest this decision upon sound principle, or to reconcile it with the doctrine of estoppels, as generally understood and expounded by the Courts ; although I am aware that there are several cases in our own Courts, that hold that a grantee of the husband, is estopped from denying his seizin in an action of dower

brought by the widow. (6 *John. R.* 393; 7 *J. R.* 279; 12 *Wend. R.* 47 ; 17 *Wend.* 164; *See* 2 *Hill* 207 ; 3 *Hill* 518.) Perhaps, the case of *Bowne* vs. *Potter*, (17 *Wend.* 164) is the only one that may be said to entirely assimilate with the present. The error originated in a *dictum* of a Judge of the Supreme Court, in an early case, and has been followed until the present time ; recently, not because the misapplication of the law of estoppels was not distinctly seen by the learned Judges who sat in the Supreme Court, but for the reason that the rule had been conclusively settled for them by repeated adjudications of the predecessors. Here, however, the question is not *res adjudicata,* and we shall be at liberty to reject the rule, if it shall be found, on examination, irreconcilable with the doctrine of estoppels *in pais,* and unsupported by principle or binding authority.

If the grantee in fee is estopped from denying the seizin of his grantor, a uniform and invariable application should be given to the rules. Indeed, the reason is not so strong for applying it in dower cases (in which only it has been fully applied) as in cases arising immediately between grantor and grantee, or those claiming under conveyances from the grantor. If the grantee, therefore, is invariably estopped, the grantor, also, is concluded; for it is a principle of the law of stoppels that they must be mutual. But, I am not aware that it has been latterly doubted, that a grantor who conveys, or releases, without interest in the lands conveyed or released, may not show that he had no title to pass by his conveyance; unless, in the conveyance itself, by way of recital or otherwise, he represents himself to be the owner of the premises, or having some particular interest therein, which it would be fraudulent to permit him to gainsay or deny. The recital, in a conveyance with certainty of a particular fact forming an inducement for the contract, will bind the grantor, but otherwise there is no estoppel. General words will not have this effect. When a grantor conveys, without title, but with covenant of warranty, he will be concluded, and an after acquired estate will pass to the grantee,

not because the party conveying had a title at the execution of his deed, or that the law will presume such an absurdity, but by way of avoiding circuity of action. An equitable estoppel will be interposed. The grantor has solemnly covenanted that he had title at the date of his conveyance, and has agreed to warrant and defend it; the law will not·permit the grantee to be evicted, and put to his action against the grantor on the covenant; or in other words, it will, in an action by the latter to recover the possession of the premises, estop him "from impeaching a title to the soundness of which he must answer on his warranty." But the grantor is not concluded unless an action may be brought against him. A quit claim deed only purports to release and quit claim whatever interest the grantor may then have in the premises. If he have none *in esse* at its delivery, nothing passes; and not having covenanted to be answerable for the soundness of the title conveyed, should the grantor afterwards acquire a valid estate in the premises, he could not be chargeable with bad faith in attempting to enforce it. In such a case he could not be met by any direct admission on his part, inconsistent with the title or claim he purposed to set up, and upon which the other party could have an action, and which would create an injury to such party by allowing it to be disproved. Kingman, the grantor in the present case, therefore, would not have been estopped by his quit claim deed to Holley from shewing either that no title passed by it, or that the estate conveyed was less than a fee. (1 *Cowen* 616; 4 *Wend.* 622; 13 *Wend.* 178; 3 *Hill* 219.) The Circuit Judge grounded his decision upon the fact "that Kingman, when in possession, had by his deed to Holley, *assumed to convey a fee.*" This, it seems to me, was an unwarrantable construction of the deed. It was an ordinary quit claim, that might be, and often is used, to pass an estate less than a fee. Kingman, by giving it, could assume nothing in relation to the extent or nature of the estate. The law fixes the force and effect to be given to the instrument. It could pass no greater estate or interest than the grantor himself possessed at the delivery of it.

Had Kingman been a tenant for life or years, or seized in fee, all his title, estate or interest would have passed to the grantee by the conveyance which he executed, and nothing more. (1 *R. S.* 739, §§ 142, 143, 145.) The deed, therefore, from Kingman to Holley, *assumed* to pass whatever estate and interest Kingman had without specifically defining it.

If. the grantor, then, might shew that no title passed by his quit claim, and recover the land in opposition to it, why should the mouth of his grantee be closed from denying that he received an estate in fee from him, or that, indeed, any title passed by his conveyance? Apply the rule of mutuality, and it is impossible to assign a valid reason. Both parties must be bound, or intended to be, else neither is concluded. There can be no soundness in the principle of estopping a grantee from shewing that no interest passed to him by the deed of the grantor, while the latter is permitted to shew it. But, it may be further observed, that this was an action for dower brought by Kingman's widow, and had Kingman conveyed the premises to Holley, with covenant of warranty, and thereby, by the doctrine of equitable estoppel, concluded himself from denying that a title passed by his deed, the widow could not have been affected. His covenant could not have estopped her. She would have been neither a party nor privy, but a stranger to the conveyance, claiming by paramount title. She would not be concluded if the grantor was, and by the rule of mutuality, as against a stranger, the grantee should not be. In the case of *Gaunt* vs. *Wainman,* (3 *Bing. N. C.* 69,) the tenant was permitted to shew the land to be leasehold, although it was set forth as freehold in the deed to himself which was produced at the trial. *Tindall, C. J.* said, that "if an estoppel existed it must of necessity be mutual; but that it could not be contended that if a husband conveyed freehold as leasehold, his widow would be concluded from shewing the real nature of the estate;" and he therefore held that the same right existed in the tenant. In the case under consideration the defendant below proposed to

Sparrow *v.* Kingman.

show that Kingman had but a leasehold estate, even, admitting that by his quit claim he assumed to convey a fee; and in this respect, the case of Gaunt *vs.* Wainman, is in direct conflict with the ruling of the Circuit Judge. It has, also, been held that if baron and feme join in a lease for years, by indenture, rendering rent, where the baron hath all the estate and the wife nothing; after the death of the baron the lessee, in action of debt brought by the feme, shall not be concluded to say that at the time of the lease made, the feme had nothing in the lands, because the feme being covert was not estopped, and, by consequence, neither shall the lessee, for the reason that all estoppels ought to be mutual. *(Bacon's Abrdg. Title Leases, (O.) and Cases cited.)* To hold therefore, that the grantee is estopped, when sued by the widow, from shewing that his grantor had no estate in premises, or a less estate than his deed purported to convey, whilst the widow not being a party or privy to the conveyance, is not barred, is a violation of Lord Coke's first rule, viz: that " estoppels ought to be reciprocal."

It is contended that the grantee is concluded by acceptance of the deed. But, waiving the doctrine of mutuality, this cannot be, unless there be an estate which has actually passed to the grantee by it, co-extensive with its description in the conveyance. The mere acceptance of a deed-poll, when no interest actually passes by it, surely cannot conclude the party accepting. Such a conclusion would be totally irreconcilable with every principle of the law of estoppel *in pais.* Lord Coke, in treating of estoppels in pais, includes that " by acceptance of an estate," but he distinctly illustrates his meaning, by an example which he gives of a case put by Littleton, viz: of a common law assurance by feoffment without writing accompanying it. Such an assurance operated on the possession, and if correctly pursued always passed a freehold or fee simple to the feoffee. But in the case of a conveyance by grant, bargain and sale or release, in which it is never necessary that actual possession should accompany the deed, the very point is whether an estate existed in the grantor, and

32

has passed, to be accepted.   In *Taylor's case* 34 Eliz. *(cited in Sir W. Jones* 317)* which has been relied on to sustain the doctrine that a grantee is estopped in dower cases to deny the seizin of the husband, it was held that if a tenant at will or for years make a feoffment in fee and died, and his wife brought dower against the feoffee, he could not plead that the husband was not seized.   This is the case of a tortious feoffment, in which the feoffee has obtained and retains the actual seizin of the lands by a wrong, in which he is in some degree a willing participant.   It is to be remembered that to make a valid feoffment, nothing was wanting but possession, and when the feoffor. had possession, though a mere naked one, a freehold or fee simple passed to the feoffee by reason of the livery.   This livery of seizin was the investiture or delivery of corporal possession of the land to the feoffee, and was absolutely necessary to complete the gift.   It was a corporal transfer of the soil from one man to another taking effect *in presenti·* or not at all.   The feoffee was a principal actor in the transfer, and passed at once into the full enjoyment of the fee.   (*Litt.* § 595, 599, 611, 698; *Co. Litt.* 366, 367 a ; 2 *Black Com.* 310, 313.)   The feoffment, which could not be made without an acceptance of the possession by the feoffee, whether tortious or not, operated as a disseisin of the owner, and although he had a right of entry by action in the case of a tortious disseisin, that right might be tolled by a descent cast.   Consequently, it will be seen that the acceptance of an estate passed by feoffment and livery of seizin differs widely from the acceptance of a modern conveyance by grant in which it is never necessary to give it validity, to enter and take corporal possession of the land, and by which the grantor may obtain a fee, or a less estate, or no estate at all.   The former was one of those solemn notorious acts *in pais* to which the common law attaches peculiar and extraordinary efficacy and importance ; as much so as to matters shown by record or writing under seal.   Hence, Lord Coke in enumerating estoppels *in pais* includes such an acceptance. But who ever heard, at common law, that where an interest

in lands was attempted to be conveyed by deed-poll, without livery, that the grantee who accepted the deed was estopped from controverting the seizin of the grantor, or in other words from shewing that nothing, or a less estate than a fee, passed by such deed? Even in the case of a lessee by deed-poll it was formerly held that he might dispute his lessors title. (*Co. Litt.* 47 *b.; Litt. Sec.* 58; 1 *Ld. Raymond* 746.) A conveyance by feoffment, with livery of seizin, has long fallen into disuse even in England, and, at least with us, a grant without the ceremony of livery is made competent to convey and pass all the estate and interest which the grantor can lawfully convey. Indeed, a grant never passed any thing more. (*Litt.* § 608.) The grant not operating directly upon the possession as in the case of a feoffment, but simply on the estate and interest which the grantor had in the premises granted, if nothing actually passes, it is obvious there can be no acceptance of an estate; or if the grantor have a less estate than he conveys, only the estate which he has passes, and the acceptance must necessarily be of the estate passed. So that in the conveyance of lands by deed, the question whether there has been an acceptance of an estate by the grantee, and the extent of it, depends on the solution of the prior question whether the grantor had any estate to convey, and if he had, what is its real nature. A point which must be determined by proof *aliunde.* In the present case the opportunity was denied to the defendant below of solving the question whether Kingman had any estate or interest to pass by his deed; and if he had, the nature and extent of it; and the Judge assumed that the mere acceptance of the instrument, whether it passed any thing or not, was sufficient to. estop the defendant from controverting Kingman's seizin.

It was intimated in the case of *Springstein* vs. *Schermerhorn,* (12 *John R.* 363) that Coke Litt. 47, *b.* was an authority to shew that a grantee generally, under any form of conveyance, was concluded from denying the title of his grantor. But the doctrine is far from being sustained by the authority. It is this, "that if a man takes a lease for years *by indenture*

of his own lands, whereof he himself is in actual seizin and possession, this estops him during the time to say that the lessor had nothing in the lands at the time of the lease made, but that he himself, or such other person, was then in actual seizin or possession thereof; *for by acceptance thereof by indenture* he is, for the time, as perfect a lessee for years, as if the lessor had at the time of the making thereof an absolute fee and inheritance in him." The remarks of the learned text writer are limited to a *lease indented* in which the grantee is estopped by his own contract under seal, and not by an act *in pais*. The extent of the authority is that the lessee is concluded by his own deed, for it is immediately said, "but if such lease for years were made by deed-poll of lands wherein the lessor had nothing, this would not estop the lessee to aver that the lessor had nothing in those lands at the time of the lease made; because the deed-poll is only the deed of the lessor, whereas the indenture is the deed of both parties, and both are as it were put in and shut up by the indenture, that is where both seal and execute it, as they may and ought." (*Co. Litt.* 47, *b. Bacon's Abrg. "Leases."* (O)). It is not law now, that a lessee even by deed-poll, who retains possession under his lease, may dispute the title of his lessor, but it was in the time of Lord Coke, and hence the illustration is pertinent and conclusive in limiting and defining the extent of the authority cited. Again, it has been repeatedly held that it may be shewn that a less estate passed than the estate mentioned in the deed, although it be an indenture; which could not be, if the rule was universal that a grantee is concluded by an acceptance of the conveyance. (3 *Wms. Saunders* 418, *note a;* 2 *Smith's Leading Cases,* 457; 4 *Kent's Com.* 98.) No proposition can be more undoubted, than that the grantee in a deed-poll is never estopped by the terms of the grant, for it is not his deed, not having sealed and executed it; and it seems a sheer absurdity to say that he is concluded by acceptance of a conveyance, by which no estate actually passed to him, for the reason that the grantor had none to convey. Such a doctrine is entirely irreconcilable with the system of modern

conveyancing and transfer of lands, and if carried out would lead to innumerable and perplexing difficulties. Actions on covenants of seizin, or warranty, or for quiet enjoyment are of daily occurrence, but how would it be possible ever to maintain them, if a grantee by an acceptance of the deed of his grantor, is barred from showing a paramount title, or a defect in the estate of the latter? If this rule prevailed, these covenants in our modern conveyances might be inserted as ornaments, but would be of little practical utility.

Chief Justice Nelson, in the case of the *Welland Canal Company* vs. *Hathaway*, (8 *Wend.* 483,) defined the doctrine of an estoppel in pais as follows: "As a general rule, a party will be concluded from denying his own acts or admissions which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." He adds that the party will be concluded "when in good conscience and honest dealing he ought not to be permitted to giansay" his acts or admissions. Bronson, J., in *Dezell* vs. *Odell*, (3 *Hill* 225) adopts this definition with approbation, and adds, "A party is only concluded against shewing the truth, or asserting his legal right, when that would have the effect of doing a wrong through his means to some third person." Under such circumstances, Justice Cowen remarks, in the latter case, "for the prevention of fraud, the law holds the act or admission to be conclusive." It must, however, have been acted upon by the other party. The party who accepts the deed in fee of a grantor having no title or a less estate than he conveys, performs no act expressly designed to influence and influencing the conduct of the latter to his injury; nor does he make any admission which, "in good conscience and honest dealing, he ought not to be permitted to gainsay." The fraud, if any there be, is on the part of the grantor, and the injury will fall solely upon the grantee, unless he be permitted to shew the truth. There is no relation existing between the grantee in fee and his grantor, as will raise even an implied obligation on the part of the former against a denial of the title and estate

of the latter.   In *Osterhout* vs. *Shoemaker*, (3 *Hill* 518) the
Court undoubtedly lays down the true rule.   Bronson, J., in
delivering the opinion of the Court, says : "Although a te-
nant cannot question the right of his landlord, a grantee in
fee may hold adversely to the grantor, and there can be no
good reason why he should not be at liberty to deny that the
grantor had any title.   There is no estoppel where the occu-
pant is not under an obligation, express or implied, that he
will at some time or in some event, surrender the possession
The grantee in fee is under no such obligation.   He does not
receive the possession under any contract, express or implied,
that he will ever give it up.   He takes the land to hold for
himself, and to dispose of it at his pleasure.   He owes no
faith or allegiance to the grantor, and he does him no wrong
when he treats him as an utter stranger to the title."   (*See
also* 15 *Mass. R.* 499.)   The reason of the rule is readily seen
why a tenant in possession may not question his landlord's
title, or a vendee, under an agreement to purchase, that of
the vendor.   He has obtained the possession which he would
not otherwise have had, "under an obligation, express or im-
plied, that he will, at some time or in some event, surrender
it."   The law will hold him to his obligation.   But even in
the case of a tenant or vendee, should he first restore the pos-
session, there would be no obstacle in the way of controvert-
ing the landlord or vendor's title.   Originally, at common law,
as we have seen, the lessee by deed poll might always dispute
the estate of the lessor ; and he is now permitted to shew that
the landlord had a less interest than he demised.   In *Doe* vs.
*Barton*, (11 *Adol. and Ellis* 315,) it was held that in eject-
ment the tenant may protect his possession against his land-
lord by shewing that the title of the latter was defeasible un-
der a prior mortgage, at the time the lease was made, and
that he has since been compelled to pay rent to the mortgagee,
and put him in constructive possession of the premises.   Thus,
even in the case of a lessee where there has been a construc-
tive eviction, as in Doe vs. Barton, he may shew a state of
facts in the protection of his possession, inconsistent with the

claim or title of his lessor. Where there has been an actual eviction by title paramount, this right has never been doubted. It would, therefore, be strange indeed, if a grantee in fee, who is never under any obligation to restore the possession, and who may have been compelled to purchase in for his protection an outstanding valid title, should be concluded from shewing that no title passed by the deed of his grantor, or that the estate or interest which passed was less than that mentioned in the deed.

I am of the opinion that the judgment of the Supreme Court should be reversed, and am content to place my vote for reversal on the distinct ground, that in an action for dower the grantee in fee of the husband is not concluded from affirmatively controverting the seizin of the latter. This is the law of England and of Massachusetts, and if an opposite rule has heretofore prevailed in this State, it is not too late to correct the error. Where property has been acquired, or rights matured, and exist, under an erroneous decision of the Courts, insomuch that irreparable mischief and injury must necessarily result from its overthrow, the maxim of *stare decisis* should prevail. But this is not one of those errors, from the correction of which injurious consequences may follow.

JEWETT, CH. J. The question to be decided in this case is, whether it was competent for the defendant to show, that Kingman never had any estate of inheritance in the premises. The Judge decided that as Kingman, when in possession had by his deed to Holley, assumed to convey in fee, and as the defendant held under that deed, he was bound by it, and was estopped from setting up that Kingman had not an estate of which his wife was dowable.

It cannot be denied, but that the decision of the Judge on the trial is in conformity with the principles settled by a series of cases determined by the Supreme Court, from Bancroft vs. White, (1 *Caines* 185) to Sherwood vs. Vandenburgh. (2 *Hill* 303.) In the latter case, however, the late Mr. Justice Cowen put his opinion upon the ground of the authorities,

and not upon the ground, that the doctrine of estoppel had been in those cases correctly applied, and distinctly suggested that the question was a very fit one for review in the Court for the correction of errors. And Mr. Justice Bronson in Osterhout vs. Shoemaker, (3 *Hill* 513) remarked in reference to the cases which hold, that in dower the grantee of the husband is estopped to deny the grantor's title, that they were to be followed because the rule had been so settled, and not because it rested on any sound principle.

As defined in the books, " an estoppel is when a man is concluded by his own act or acceptance, to say the truth," of which there are three kinds. By matter of record, by deed, and by matter of pais. The estoppel which the plaintiff claims in this case arises by matter in pais, if at all; that species arises, by livery, by entry, by acceptance of rent, by partition, and by *acceptance of an estate.* (*Co. Litt.* 666, 667.)

The principle in respect to that, which arises by an acceptance of an estate, is, that a man shall not be permitted, during his possession of premises, to dispute the title of the landlord under whom he entered, and applies only in cases where the party accepting the estate is under some obligation, express or implied, that he will at some time or in some event surrender the possession. "The grantee in fee, is under no such obligation. He does not receive the possession under any contract express or implied that he will ever give it up. He takes the land to hold for himself, and to dispose of it at pleasure. He owes no faith or allegiance to the grantor, and does him no wrong when he treats him as an utter stranger to the title.''

The deed from Kingman to Holley was a mere quit claim, deed-poll, of one part, signed by Kingman only. Therefore, no one at common law, would be bound by it, but he, and it would not work an estoppel against the grantee, and I think not as against the grantor. (*Co. Litt.* 47, 61, *Shep. Touch.* 1 *Am. Ed.* 53, *Right* vs. *Bucknell*, 2 *Barn and Adol.* 278.) At the common law, all the parts of a *deed indented* in judgment of law made but one deed, and every part was of as

great force as all the parts together, and were esteemed the mutual deeds of either party, and either party might be bound by either part of the same, and the words of the indenture were the words of either party. It was stronger than a deed-poll, for it worked an estoppel against either party to say or except any thing against any thing contained in it. (1 *Sheph. Touch.* 53 *Plow.* 434.)

The argument on the side of the plaintiff is that Kingman *assumed to convey a fee;* and that as the defendant held under that deed, he was bound by that assumption. This, I think is founded upon a mistake of *fact* as well as of law. I have already remarked that the deed is merely a quit claim deed-poll; and therefore, upon its face and by its terms, it only purports to convey whatever interest in the premises the grantor then had. It does not affirm that he had any. How then can the grantor be supposed conclusively to admit that he had? If the admission should be co-extensive with the grant, it would be but conditional; that is, that if the grantor had any right or interest, which passed by his deed it vested in Holley the grantee.

And now, by 1 *R. S.* 739, § 143, it is enacted that no greater estate or interest shall be construed to pass by any grant or conveyance, thereafter executed, than the grantor himself possessed at the delivery of the deed, or could then lawfully convey, except that every grant should be conclusive as against the grantor and his heirs claiming from him by descent; and by § 145, it is declared that a conveyance made by a tenant for life or years, of a greater estate than he possessed or could lawfully convey, shall not work a forfeiture of his estate, but shall pass to the grantor all the title, estate, or interest, which such tenant could lawfully convey.

And again, by 1 *R. S.* 748, § 1, it is declared that every grant or devise in real estate, or any interest therein, thereafter to be executed, shall pass all the estate, or interest of the grantor or testator; unless the intent to pass a less estate or interest shall appear, by express terms, or be necessarily implied in the terms of such grant; and § 2 provides

33

that in the construction of every instrument creating or con-
veying, or authorizing the creation or conveyance of, any
estate or interest in lands, it shall be the duty of Courts of
Justice, to carry into effect the intent of the parties, so far
as it can be collected from the whole instrument, and is con-
sistent with the rules of law. Now, I do not think that we
are authorized to say that Kingman assumed by his deed to
convey a fee; the clear intent, as well as expression of his
deed, is to convey only what interest or estate he then had in
the premises. But again. *Co. Litt.* 352 *a*, shows, that
every estoppel must be reciprocal, that is to bind both par-
ties, and that is the reason that, regularly, a stranger shall
neither take advantage of, nor be bound by, the estoppel;
but privies in blood, as the heir, and privies in estate, as the
feoffee, lessee, &c.; privies in law, as the lord by escheat, ten-
ant by the courtesy, tenant in dower, the incumbent of a
benifice, and others that come in under by act of law, or in the
post, shall be bound by, and take advantage of estoppels; and
Coke, in his twenty-first reading on fines, says "estoppel is re-
ciprocal on both sides; for he that shall not be concluded by a
record or other matter of estoppel, shall not conclude another
by it." (*Doe* vs. *Martin*, 8. *Barn. and Cress.* 497.)

Now Kingman himself would not have been estopped by his
deed to Holley from showing that *no title* passed by it, on the
ground that it contains no covenant of warranty; an after ac-
quired estate by a grantor passes to his previous grantee by
the rule of estoppel, only when there are such covenants of
warranty, and then to avoid circuity of action. (*Jackson* vs.
*Hubbell*, 1 *Cowen* 616; *Jackson* vs. *Bradford*, 4 *Wend.* 622;
*Jackson* vs. *Waldron*, 13 *Wend.* 178.)

The plaintiff could not claim any thing by the rule of estop-
pel, in respect to the deed executed by her husband to Holley.
She is a stranger to it; her right to dower rests upon the title
or estate which her husband acquired prior to his deed to Hol-
ley, and is derivable under his grantor. This would be a suf-
ficient reason why she could not estop the grantee of her hus-

band. There would be no mutuality, as she would not be bound by it. (*Jewell* vs. *Harrington*, 19 *Wend.* 471.)

The plaintiff is not entitled to dower in any other lands than in which her husband, during the marriage, was seized of an estate of inheritance; and I think it clear that when she claims dower, the defendant is at liberty to show in his defence that her husband was not, during the marriage, seized of such an estate. (*Gaunt* vs. *Wainman*, 3 *Bing. N. C.* 69.)

I am therefore of opinion that the judgment should be re- versed, and that a *venire de novo* should be awarded by the Supreme Court, with costs, to abide the event.

RUGGLES, JONES, JOHNSON and GRAY, Js., concurred in the result of the preceding opinions.

BRONSON, J., dissenting. As to one-half of the Erie Mills, the defendant derived his title and possession from George G. Kingman, the plaintiff's husband; and still holds under that title. So long as he thus holds, he is estopped from denying the seizin of the husband, in an action brought by the widow to recover her dower. (*Hitchcock* v. *Harrington*, 6 *John.* 290; *Collins* v. *Torry*, 7 *John.* 278; *Hitchcock* v. *Carpen- ter*, 9 *John.* 344; *Davis* v. *Darrow*, 12 *Wend.* 65; *Bowne* v. *Potter*, 17 *Wend.* 164; *Sherwood* v. *Vandenburgh*, 2 *Hill* 303.) Questionable as I think this doctrine was at the first, (2 *Hill* 308, 3 *Hill* 518, 519,) it has prevailed too long in this State to be now overturned by a judicial decision. If there is any good reason for changing the rule, the change should be made by the Legislature, and not by the Courts.

In Maine and New Jersey the rule is the same as it is with us. (*Kimball* v. *Kimball*, 2 *Greenl.* 226; *Nason* v. *Allen*, 6 *id.* 243; *Hains* v. *Gardner*, 1 *Fairf.* 383; *Hamblin* v. *Bank of Cumberland*, 19 *Maine*, (1 *Appleton*) 66; *English* v. *Wright*, *Coxe* (*N. J.*) *Rep.* 437.) In Massachusetts it is the other way. (*Small* v. *Procter*, 15 *Mass.* 495.)

So long as those claiming under the husband have not been disturbed in the enjoyment of the property, there is no very

good reason for allowing them to defeat the widow's claim to dower, by setting up an outstanding title, which may never be asserted; and the. current of adjudication in this State has not carried the estoppel beyond cases of that description. There is, I admit, no principle upon which the estoppel can be carried another step, and applied to a case where the husband's grantee has been obliged to purchase in a good outstanding title for the ·purpose of protecting his possession; and if the case of *Bowne* v. *Potter*, (17 *Wend.* 164,) must be considered as going that length, I agree that it cannot be supported. But there is no such question in this case.

This writ of error has, I presume, been brought in consequence of the opinion which had been expressed by Mr. Justice Cowen and myself, and which opinion I still entertain, that originally the doctrine of estoppel was improperly applied to this class of cases. (*Sherwood* vs. *Vandenburgh*, 2 *Hill* 303–9; *Osterhout* v. *Shoemaker*, 3 *id.* 518–19.) But it will be seen that neither of us felt at liberty to depart from the rule as it had been settled, nor do I feel so now. After an erroneous decision touching rights of property has been followed thirty or forty years, or even a much less time, the Courts cannot retrace their steps without committing a new error nearly as great as the one at the first.

The defendant's counsel places great reliance upon a remark of Mr. Justice Cowen, to the effect, that although the point was too firmly established to be revised by the Supreme Court, it might still be a fit question for review in the Court of Errors. There was, I think, a good deal of irony in that remark. Surely the learned Judge did not intend to be understood that what was settled law in one Court, was not also good law in all the other Courts of the State; that a Justice of the Supreme Court, when sitting in his own Court, was bound to decide one way, and when sitting in the Court of Errors, was at liberty to decide the other way. The thing is preposterous. The remark in question was made concerning a Court which not only corrected erroneous decisions, but sometimes took the liberty of reforming the law itself, where it was supposed to

need improvement. I claim no such prerogative. I am of opinion that the judgment of the Supreme Court should be affirmed.

GARDINER, J., having been engaged professionally in the cause, gave no opinion.

Judgment reversed, and *venire de novo* awarded.