### BYBEE v. OREGON & C. RY. CO.

*(Circuit Court, D. Oregon. February 19, 1886.)*

1. GRANT TO THE OREGON & CALIFORNIA RAILWAY COMPANY BY THE ACT OF 1866.

   The grant of lands and the right of way to the Oregon & California Railway Company by the act of July 25, 1866, (14 St. 239,) and the act of June 25, 1868, (15 St. 80,) construed to be (1) a grant of the odd sections of land within 10 miles on each side of the line of the road, not otherwise appropriated or disposed of under the laws of the United States prior to the definite location of said line, on condition that the road is completed by July 1, 1880, for a breach of which condition the grantor alone can claim a forfeiture; (2) the grant of the right of way absolute, to take effect on the definite location of the line of the road from the passage of the act of 1866, as against any person claiming under a settlement of appropriation subsequent to the passage thereof, without condition, save that which the law tacitly annexes to the grant of any such franchise, the liability to be lost or forfeited for non-user, ascertained and determined in a judicial proceeding instituted by the government for that purpose.

2. SAME.

   The declaration in section 8 of the act of 1866, that, in case the road is not completed by the time prescribed, "this act shall be null and void," taken in connection with the context, that the lands not patented to the company at the date of any such failure "shall revert to the United States," and the general purpose of the act, and the policy of congress in passing it, amounts to nothing more than a declaration that the lands are granted on the condition that if the road is not completed in due time, the portion then remaining unpatented or unearned may be reclaimed by the United States.

Action to Recover Damages.

*Edward B. Watson* and *James F. Watson*, for plaintiff.

*E. C. Bronaugh*, for defendant.

DEADY, J. This action was brought in the circuit court of the state, for Jackson county, to recover damages for an alleged injury to a water ditch. The defendant answered, denying sundry allegations in the complaint, and then set up a title or right of way in itself over the *locus in quo*, under an act of congress, to which defense the plaintiff demurred. Thereupon the cause was removed by the defendant to this court, as one arising under a law of the United States, where the questions arising on the demurrer were argued by counsel. It is alleged in the complaint that the defendant is a corporation duly organized under the laws of Oregon; that on September 3, 1883, the plaintiff was the owner in fee of an undivided half interest in a certain water ditch and right, situated on the south side of Rogue river, in said county, and in the possession thereof as tenant in common with Daniel Fisher, when he and said Fisher, in consideration of

$250 paid them by the defendant, conveyed to it the right to enter on said ditch, and construct and operate its railway over the same, on condition, however, that it would not impair or obstruct the use or enjoyment of said ditch by said grantors, to which condition the defendant assented, and entered into possession of the premises in pursuance of said deed and subject to said condition; that, notwithstanding, the defendant constructed its road across said ditch in such a manner as to permanently obstruct and destroy the same; and that the defendant has appropriated said ditch to its exclusive use, so as to prevent the flow of water therein where said road crosses the same, to the damage of plaintiff $7,000. It is stated in the defense in question that the defendant was incorporated to construct and operate a railway and telegraph line from Portland to the southern boundary of the state; that by section 3 of the act of July 25, 1866, (14 St. 240,) entitled "An act granting lands to aid in the construction of a railway and telegraph line from the Central Pacific Railway, in California, to Portland, Oregon," there was granted to the defendant the right of way through the public domain, to the extent of 200 feet in width wherever its road might be located on said lands; that the ditch, at the point alleged to be injured, was located and dug and is situated on the public domain, where, on July 25, 1866, the defendant, by virtue of the grant aforesaid, had the right to locate its road, in doing which, and in constructing and operating the same, it became necessary for the defendant to appropriate 200 feet in width of the land over which said ditch was located, and construct and operate its road thereon, and that any injury which was done to said ditch was the result of such construction and operation, and not otherwise; that on May 17, 1879, said Fisher attempted to appropriate the land in question to his use under the mining laws of the United States, and thereafter constructed said ditch over said "right-of-way land," which is the only claim said Fisher ever had or made thereto, and the plaintiff claims under said Fisher, and never had or made any other claim to the premises than the one so derived; and that the defendant took nothing by said deed from the plaintiff, for that it then owned, by virtue of said grant, all the right and property pretended to be conveyed thereby. The causes of demurrer assigned to this defense are: (1) It does not state facts sufficient to constitute a defense; (2) the plaintiff is estopped, on the facts stated, from claiming the right of way under said act of July 25, 1866; and (3) the defendant forfeited its right of way under said grant by its failure to complete its road over the same on or before July 1, 1875.

By section 2 of the act of 1866 there was granted to the defendant, to aid in the construction of its road, every alternate section of the public lands, designated by odd numbers, to the amount of 10 such sections per mile, not otherwise disposed of by the United States, with the right to select, from the odd sections within 10 miles of each side of said grant, lands in lieu of any that may be disposed of prior to

the location of the line of said road. And by section 3 there was granted to it the right of way over the public lands, to the extent of 100 feet on each side of the road, where the same may pass over said lands. By sections 6 and 8 of said act it is provided that unless "the whole" of the road is completed before July 1, 1875, the "act shall be null and void, and all the lands not conveyed by patent to said company" at the date of said failure "shall revert to the United States;" but by the act of June 25, 1868, (15 St. 80,) the time for completing the road was extended to July 1, 1880.

It is nowhere directly stated that the road was not completed within the time prescribed by congress, but it is fairly inferable that such is the case from the fact stated in the complaint and not denied in the defense, that on September 3, 1883, the defendant took a deed from the plaintiff giving the former the right to construct and operate its road at a point between the *termini* thereof, across the ditch of the latter. And it is a matter of such common notoriety that the road was not constructed south of Roseburg until after 1880, and it is not yet quite completed to the southern boundary of the state, that the court may well take judicial notice of the fact; and on the argument it was practically admitted.

This act is a present grant, but the particular sections that pass to the company under it cannot be ascertained until the route is definitely located; but, when ascertained, the title attaches from the date of the act. It is also a grant made on a condition subsequent,—that the road shall be completed by a prescribed time,—but no one can take advantage of a breach of this condition but the government,—the grantor,— and in the nature of things it can only do so by judicial proceedings authorized by law, or a legislative resumption of the grant. This well-settled rule of law concerning the operation of a condition subsequent annexed to an estate in lands in fee, and the effect of a breach thereof, has been uniformly applied by the supreme court to the grants of the public lands made by congress in aid of the construction of railways, with the condition annexed that they should be completed within a specified time. *Railroad* v. *Smith*, 9 Wall. 97; *Schulenberg* v. *Harriman*, 21 Wall. 60; *Leavenworth Ry. Co.* v. *U. S.*, 92 U. S. 740; *Missouri Ry. Co.* v. *Kansas Pac. Ry. Co.*, 97 U. S. 496.

But counsel for the demurrer contend that the language of the act of 1866 is peculiar, and that by operation of section 8 the act becomes "null and void," at once and *in toto*, whenever and as soon as there is a breach of the condition concerning the completion of the road. But the general expression "this act shall be null and void" is qualified by the words immediately following: "And all the lands not conveyed by patent to said company,    *    *    *    at the date of any such failure, shall revert to the United States." This shows how far and for what purpose the act would, in such contingency, become "null." Certainly it would not become "null" as to the lands already patented under it, or earned in pursuance of it. In other words, it

is to become "null" only so far as to allow the grantor to resume the grant, on a failure to comply with the condition, and then only as to the lands remaining unpatented or unearned; and but for this qualification the grant might have been wholly resumed or forfeited for any failure to comply with the condition, even in the construction of the last mile. And this construction of the section is in harmony with the general purpose of the act and the policy of congress in making the grant.

In the leading case of *Schulenberg* v. *Harriman, supra,* the act making the grant did not, it is true, declare that the same should become "null and void" on a failure to comply with the condition and complete the road; but it did provide what, in my judgment, is but the legal equivalent, in this respect, of section 8 of the act of 1866, namely: "If said road is not completed within ten years, no further sales shall be made, and the lands unsold shall revert to the United States;" and so thereafter the act would cease to have any force or effect, and practically would be "null."

Nor did the failure to complete the road by July 1, 1880, in any view of the matter, cause the act of 1866 to become "null" as to the right of way. The grant of the right of way is a separate and distinct matter from that of the lands to aid in the construction of the road. The reversion or forfeiture provided for in section 8 of the act of 1866 does not include the right of way, but is limited to the "lands" remaining unpatented or unearned at the time of the failure. The grant of the right of way is without condition, except that which the law tacitly annexes to all such easements,—the liability to be lost or forfeited for non-user, ascertained and determined in a judicial proceeding instituted by the government for that purpose. But it is also a present absolute grant, and takes effect, when the line of the road is located, from the date of the act, as against any intervening claim or settlement whatever. Whoever settled on or appropriated for any purpose, under any law of the United States, any portion of the public lands on the possible line of this road, after July 25, 1866, did so subject to this grant of the right of way to this defendant.

It appears from the defense that the plaintiff never was the owner of the land in question, but that it has been occupied or appropriated by him, and those under whom he claims, since May, 1879, under the act of July 26, 1866 (14 St. 253,) entitled "An act granting the right of way to ditch and canal owners over the public lands and for other purposes." But this occupation commenced long after the passage of the act granting the right of way over this land to the defendant, and is subordinate thereto; and this is so without reference to the fact that the act, under which the ditch was dug, is one day later in time than the other; for no one can claim any right, under that act, to any particular place or piece of ground prior to his occupation or appropriation of the same thereunder.

The conclusion here reached, in regard to the nature and effect of the grant of the right of way to the defendant, is fully sustained by the supreme court in *Railway Co.* v. *Alling,* 99 U. S. 474, and *Railway Co.* v. *Baldwin,* 103 U. S. 428. In the latter of these cases Mr. Justice FIELD suggests the reasons why grants of land in aid of the construction of railways have generally been made subject to the right of appropriation by individuals under the pre-emption and other like laws of the United States between the date of the act making the grant and the fixing of the limits and operation of the grant by the definite location of the line of the road; while those of the mere right of way have been made absolute, and to take effect from the passage of the act, as against any location, claim, or settlement made after the date of the grant and before the definite location of such right. He says:

"The grant of the right of way * * * contains no reservations or exceptions. It is a present absolute grant, subject to no conditions except those necessarily implied, such as that the road shall be constructed and used for the purposes designed. Nor is there anything in the policy of the government with respect to the public lands which would call for any qualification of the terms. Those lands would not be the less valuable for settlement by a road running through them. On the contrary, their value would be greatly enhanced thereby. The right of way for the whole distance of the proposed route was a very important part of the aid given. If the company could be compelled to purchase its way over any section that might be occupied in advance of its location, very serious obstacles would be often imposed to the progress of the road. For any loss of lands by settlement or reservation, other lands are given, but for the loss of the right of way by these means, no compensation is provided, nor could any be given by the substitution of another route."

In the construction of this ditch on the possible line of the defendant's right of way from Portland to the southern boundary of the state, the parties engaged therein took the risk that such line might be located on, along, or across the same, in which case their right, under the ditch and canal act of 1862, must so far yield to the prior and better right of the defendant under the railway act of the same year. *Doran* v. *Central Pac. Ry. Co.,* 24 Cal. 259. In this case the court say:

"The grant by congress of the right of way over any portion of the public land to which the United States have title, and to which private rights have not been attached, under the laws of congress, vests in the grantee the full and complete right of entry for the purpose of enjoying the right granted, and no person claiming in his own right any interest in the lands can prevent the grantee from entering in pursuance of his grant, or can recover damages that may necessarily be occasioned by such entry."

But the plaintiff contends that the defendant is estopped, by the acceptance of the deed of September 3, 1883, from asserting its prior title to the premises under the act of 1866 granting it the right of way over the same. It is a well-established rule of law that, ordinarily, a vendee is under no obligation to support his vendor's title, and therefore he is not estopped to deny the same except in a few cases

where his conduct in so doing would be repugnant to his acceptance of the grantor's deed, or a claim made under it. *Society, etc.,* v. *Pawlet,* 4 Pet. 506; *Blight* v. *Rochester,* 7 Wheat. 547; *Croxall* v. *Shererd,* 5 Wall. 287; *Merryman* v. *Bourne,* 9 Wall. 600; *Sparrow* v. *Kingman,* 1 N. Y. 242; *Coakley* v. *Perry,* 3 Ohio St. 344; *Stark* v. *Starr,* 1 Sawy. 24; Bigelow, Estop. 294.

This is a peculiar case, and my attention has not been called to one that is its exact parallel. At the date of his deed, the plaintiff's ditch was constructed along and across the premises, but the legal right to the use and possession thereof, for the purpose of its incorporation, was in the defendant. From the date of the definite location of the line of the defendant's road, the plaintiff had no right or easement to or in the land within the defendant's right of way, and was, to all intents and purposes, a naked trespasser thereon. He therefore had nothing to sell or convey to the defendant. His possession, if any, was merely constructive. Under these circumstances, the parties apparently supposing that the plaintiff had acquired some right to flow the water over the premises, the defendant purchased the privilege of constructing and operating its road across and along the ditch for $250, and on the further condition that it would not thereby obstruct or impair the same. But this condition or covenant being incident to and dependent on the conveyance of some right in the premises to the defendant, if the latter is at liberty to show that nothing passed by such conveyance, the condition or covenant is left without consideration or support and falls to the ground. But if there is any good reason in law or justice, notwithstanding the want of title in the plaintiff, that the defendant should keep this condition or covenant, it will be estopped to show a want of consideration from the plaintiff. But the plaintiff has really parted with nothing, nor has the defendant obtained anything from him, although it has paid the plaintiff $250. The ditch was dug on what turned out to be the defendant's right-of-way land, and the plaintiff, in consenting to allow it to construct and operate its road thereon, surrendered nothing to which it had any legal right. The conveyance was altogether an idle and superfluous act, and whatever misapprehension of the parties, as to their rights in the premises, may have induced it, in legal effect it is a mere nullity.

The case of *Holden* v. *Andrews,* 38 Cal. 119, is somewhat analogous. Holden, being in possession of a tract of the public land, sold or abandoned the same to Andrews for a specified sum, to be paid in the future. Andrews failed to pay, and Holden brought an action to recover the possession of the land, in which he had judgment. On the trial the defendant offered to prove that since the sale he had acquired the title from the United States under the homestead law, which was not allowed, on the ground that he was estopped from setting up the after-acquired title from the United States without first surrendering the possession obtained by his purchase from the plain-

tiff. On appeal the judgment was reversed and a new trial ordered. The opinion of the court was delivered by Mr. Justice SAWYER, who said: "We think this is not a case that falls within the rule. The plaintiff did not pretend to have any other title than by naked possession."

In *Coakley* v. *Perry, supra*, the court says:

"The decisions in this country, in which the grantee and those claiming under him were held to be estopped to deny the title of the grantor, were cases in which the grantee received and held possession under the conveyance, and relied upon it as his source of title, and not where the grantee held the title under a prior and independent conveyance."

Here the defendant derived nothing from the plaintiff, and does not rely on his conveyance as a source of title, but does rely on a title derived from the United States prior to such conveyance. On the whole, my judgment is that this case is not an exception to the rule which allows a vendee to deny his grantor's title, and from the facts stated in this defense it clearly appears that the defendant took nothing by the conveyance from the plaintiff, and is therefore not bound to keep the condition or covenant therein concerning the plaintiff's ditch.

The demurrer must be overruled; and it is so ordered.