**WHITE et al. v. GREENE et al.**

No. 1855.

Court of Civil Appeals of Texas. Eastland.

March 3, 1939.

Rehearing Denied June 16, 1939.

Wynne & Wynne, of Longview, Newland & Cornett, of Linden, Rodgers & Rodgers, of Texarkana, W. B. Chauncey, of Wichita Falls, Wm. Hodges, of Texarkana, and R. O. Kenley, of Houston, for appellants.

King & Wheeler, of Texarkana, Vinson, Elkins, Weems & Francis, and Ben A. Harper, all of Houston, Carney & Carney, of Atlanta, and W. H. Francis, of Dallas, for appellees.

FUNDERBURK, Justice.

Mandy Garrett White, a feme sole, surviving wife of Alex Garrett, deceased, together with others claiming under them, brought this suit against Mrs. Meda Greene, surviving wife of F. M. Greene, deceased, and others claiming under them to recover 154.1 acres of land, more or less, located in Cass County, Texas. Pending the suit, a settlement was made between plaintiffs and some of the defendants as to 33.37 acres of the land, leaving the suit to be

finally tried as between all other parties and as affecting only the remainder of the land. The suit was treated by the parties as a statutory action of trespass to try title. Plaintiffs pleaded specially title by ten years' limitation (R.S. 1925, Arts. 5510 and 5513). Damages against the defendant Magnolia Petroleum Company were alleged in the sum of $1,000,000.

The defendants answered by various pleas, including "not guilty." Methodist Orphanage, a corporation, was permitted to intervene as a defendant, a plea of abatement as to which was overruled.

The case was tried by jury. When the parties had rested, the plaintiffs made a

the land, other than the minerals, to the plaintiffs. Following the overruling of their motion for a new trial, the plaintiffs have appealed. For convenience the parties will be referred to as plaintiffs and defendants, as in the lower court, or by name.

The first question is whether or not the issue of the ownership of the land was conclusively established, by the evidence, in favor of the plaintiffs, as against the defendants, or any of them, thereby entitling the plaintiffs to the requested peremptory instruction. The accompanying sketch, not however accurately drawn to scale, will permit of a better understanding of the opinion.

motion to strike out certain evidence and to instruct a verdict for them, which was overruled. Defendants also made a motion to instruct a verdict in their favor which was overruled. Before the jury had agreed upon a verdict upon all issues, the court, in response to a motion of the defendants to withdraw the case from the jury and to render judgment for them, or, in the alternative to instruct the jury to return a verdict in their favor, withdrew the case from the jury, but deferred, for a time, to render judgment. During an extension of the term of the court, judgment was rendered for the defendants, awarding recovery to them of all minerals in the land, vesting them with title thereto, according to their several interests; but awarding title to

We are confronted with the alternatives of stating our conclusions in such general terms as to omit many important and interesting details, or of discussing such details and their interrelations with the result of extending this opinion to a very great and undesirable length. We adopt the first of these alternatives.

 It is believed that the naked question of title depends upon the fact of whether or not the southeast corner of the James Davenport Survey was located, on the ground, at a point 94 varas west of the northwest corner of the J. H. Rives Survey, or was it 94 varas west of the northeast corner of the said J. H. Rives Survey? That the James Davenport Survey and the Robt. Trammel Survey, adjoining

803

it, partly on the west, on the north, on the east and partly on the south, were each surveyed on the ground, mapped in the General Land Office and patents issued thereto accordingly, all based upon and consistent with the fact that the southeast corner of the James Davenport Survey and a coincident inner corner of the Robt. Trammel Survey were 94 varas west of the northwest corner (not the northeast corner) of the J. H. Rives Survey; and that said Davenport and Trammel Surveys occupied substantially the position and relationship to each other and to the J. H. Rives Survey as depicted on the accompanying sketch, was shown by evidence so overwhelming and conclusive that the matters relied upon to raise an issue of the fact, full effect being given to the same, amounted, in our opinion, to no more, if any, than the merest scintilla of evidence, and properly to be regarded as no evidence whatever. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

In the further appraisal of the evidence, we shall regard such fact as conclusively established and upon same as a premise, we think the evidence was equally conclusive that the 133 acres of land in suit is located, on the ground, wholly on the Robt. Trammel Survey, and therefore, of course, entirely without the bounds of the James Davenport Survey. According to the undisputed evidence, Alex and Mandy Garrett went into actual possession of the land at least as early as the year 1895, claiming same as their own and not in subordination to the right, or claim of right, of any other; and that condition remained unchanged up to May 24, 1901, the date of the bond for title from R. M. Huffines to Alex Garrett for 110 acres of land out of the northeast corner of the James Davenport Survey. The nature of such possession was not changed by the acceptance of said bond for title from R. M. Huffines for at least two good reasons. In the first place, said bond for title related only to land which was a part of the James Davenport Survey and therefore, in view of the conclusions above stated, had no relation to the land in suit, located wholly upon the Robt. Trammel Survey. Said two surveys were not in any degree or extent in conflict with each other. The bond for title described and related exclusively to land which was a part of the James Davenport Survey, and by its own terms was wholly ineffective as regarding land

not a part of said survey. In the next place, Huffines was by the undisputed evidence shown to have no title to land on the Trammel Survey and, therefore, no title to the land in suit. The title, therefore, of the Garretts to the land in suit, even if evidenced alone by their prior possession, was not affected by said bond for title, if referable to the land in suit, since it is not shown to have obligated Huffines to convey any right which was not already possessed by the obligee in said bond. It is our conclusion, therefore, that the adverse character of the possession of the land in suit by the Garretts up to the date of said bond for title was in no way affected by acceptance of the bond for title, but continued after that date, the same as for some years before, up to March 2, 1910, the date of a deed from F. M. Greene to Alex Garrett, presently to be noticed.

The authorities, we think, establish as a sound legal proposition that in order for a possession of land to be adverse within the intent of the law providing for the acquisition of title by limitation, the claim of right, admittedly essential on the part of the possessor, need be adverse only to the owner of the land, or as including such owner. Converse v. Ringer, 6 Tex.Civ. App. 51, 24 S.W. 705; Portis v. Hill, 14 Tex. 69, 76, 65 Am.Dec. 99; Meaders v. Moore, Tex.Civ.App., 113 S.W.2d 689; Longley v. Warren, 11 Tex.Civ.App. 269, 33 S.W. 304; Smith v. Jones, 103 Tex. 632, 132 S.W. 469, 31 L.R.A.,N.S., 153; Masterson v. Pullen, Tex.Civ.App., 207 S.W. 537; Petty v. Griffin, Tex.Civ.App., 241 S.W. 252, 254; Carter v. Webb, Tex.Civ.App., 239 S.W. 630; Beaumont Pasture Co. v. Polk, Tex.Civ.App., 55 S.W. 614; Wingfield v. Smith, Tex.Civ.App., 241 S.W. 531; 2 Tex.Jur. p. 115, sec. 60; 2 C.J. 131, sec. 225.

As long ago said by a great judge of our Supreme Court with reference to an occupant like Alex Garrett, he "is not required to give notoriety or publicity to the title, or right under which he claims to hold, to enable him to set the statute in motion against the *true owner*. If the defendant has entered upon the land under the plaintiff's title, he is, of course, cognizant of the fact; but if he has not, the title under which he claims, is a matter of secondary importance to the plaintiff, for *he can only call it in question on the strength of his own title*." (Italics ours) Gillespie v. Jones, 26 Tex. 343, 346. In the instant

804

case, the ordinary positions of plaintiff and defendant are reversed. Considering Garrett as occupying the position of defendant and Huffines (in whose right the defendants claim) as in the position of plaintiff, the language above quoted may be paraphrased thus: Garrett, the occupant "is [was] not required to give notoriety or publicity to the title or right under which he claims [claimed] to hold, to enable' him to set the statute [of limitation] in motion against the true owner; if the defendant [Garrett] has entered upon the land under the plaintiffs' [Huffines] title, he [Huffines] is, of course, cognizant of the fact; but if he [Garrett] has not, the title under which he [Garrett] claims is a matter of secondary importance to the plaintiff [Huffines] for he [Huffines] can only call it in question on the strength of his own title."

Since Huffines was never the owner of the land in suit, the defendants claiming under him offered no evidence (there being none) to show any better title than Garrett's title, whatever its true nature, which the law presumes from the fact of his possession alone. The possession of Garrett, therefore, remained adverse to the true owner of the land, which was not Huffines, unaffected by the implied acknowledgment of title in Huffines, the stranger.

■ We next consider the effect of said deed dated March 2, 1910, from F. M. Greene to Alex Garrett, purporting to convey the land in suit, but in part describing it as out of the James Davenport Survey. This deed, by its terms, reserved all minerals in Greene; and it is under this purported reservation in Greene that the defendants claim any interest in the land. By deed dated June 19, 1907, R. M. Huffines had purported to convey the land to F. M. Greene by the same description; that is, as purportedly a part of the James Davenport Survey, but otherwise described to include the land in suit. As said before, Huffines had no title to any land on the Trammel Survey, and, therefore, his deed to Greene was ineffective to convey the land in suit. The said deed from Greene to Garrett with the mineral reservation, therefore, conveyed nothing, unless possibly land on the Davenport Survey. It did not convey ownership of, or any interest in, the land in suit, nor was it effective to reserve any part of said land or interest therein, presumed by his possession, to be owned by Garrett.

■ A just appraisal of the evidence, we think, shows conclusively that on March 2, 1910, the date of the said Greene to Garrett deed, the Garretts had perfected title to the land, in suit, under the ten years' statute of limitation. But whether so or not, is of no controlling importance since, under the evidence, the presumption of title from the prior possession has the same relation to the plaintiffs' right of recovery as proof of title by limitation.

Insofar as the deed of 1910 purported to convey to Garrett the land in suit located on the Trammel Survey, it conveyed nothing not already either actually or presumptively owned by Garrett. If Garrett in fact had no title but was only an adverse possessor of the land, the acceptance of the deed from Greene did not change the adverse character of such possession as to the *true owner of the land* any more so than did the acceptance of the bond for title from Huffines years before, according to the authorities already cited.

■■ Did the acceptance by Garrett of the deed from Greene, either alone, or in connection with subsequent conduct in relation thereto, or growing out of same, create an estoppel in favor of the defendants, or any of them? We think not. The only land, if any, to which any of the defendants produced any evidence of title was land on the James Davenport Survey, and not the Robt. Trammel Survey. The public records gave constructive notice to all parties dealing with the land in suit and contemplating the acquisition of same or any interest therein with title to be deraigned through Huffines and/or Greene that unless the land was a part of the James Davenport Survey neither Huffines nor Greene ever owned it. Greene never being the owner of the land could not, by purporting to convey it with a reservation of the minerals, thereby acquire the ownership of the minerals. The nature of Garretts' occupancy was determined by the legal proposition well supported by authority that actual possession of land is by presumption sufficient proof of title in the possessor against all persons not in possession, and who are not shown to have any title to such land. House v. Reavis, 89 Tex. 626, 35 S. W. 1063; Allen v. Boggess, 94 Tex. 83, 58 S.W. 833; Lockett v. Glen, Tex.Sup., 65 S.W. 482; Caplen v. Drew, 54 Tex. 493; Duren v. Strong, 53 Tex. 379.; Alexander

v. Gilliam, 39 Tex. 227; Payton v. Loustalott, Tex.Com.App., 53 S.W.2d 1012; Barton v. Tharp, Tex.Civ.App., 27 S.W.2d 885; Bankston v. Fagan, Tex.Civ.App., 64 S.W.2d 820; Kirby v. Boaz, 41 Tex.Civ. App. 282, 91 S.W. 642; Texas Digest, Trespass to Try Title, █

█ Co-existent with the above proposition is another equally well established and, in our opinion, both together conclusive of the issue of estoppel and that is that as against the owner of land by limitation title, or any other title existing presumptively from prior possession, in a contest of title by those having no title, there arises no estoppel from the fact of such owner subsequently taking deeds to the land from persons having no title or right thereto. Berger v. Kirby, 105 Tex. 611, 153 S.W. 1130, 51 L.R.A.,N.S., 182; Collins v. Box, 40 Tex. 190, 193; Lewis v. City of San Antonio, 7 Tex. 288; Houston Oil Co. v. Davis, 62 Tex.Civ.App. 658, 132 S.W. 808, Houston Oil Co. v. Davis, Tex.Civ.App., 181 S.W. 851, 853; Stewart v. Williams, Tex.Civ.App., 167 S.W. 761, 763; Peaslee v. Walker, 34 Tex.Civ.App. 297, 78 S.W. 980; Hayes v. Taylor, 17 Tex.Civ.App. 449, 43 S.W. 314; Foster v. Persinger, Tex.Civ.App., 30 S.W.2d 378; O'Connor v. Presswood, Tex.Civ.App., 76 S.W.2d 799; Franklin v. Smith, Tex.Civ.App., 265 S.W. 715; Graves v. Graves, Tex.Civ.App., 192 S.W. 1105; Nesral Prod. Co. v. St. L. B. & M. Ry. Co., Tex.Civ.App., 84 S.W.2d 805; Stuart v. Easton, 170 U.S. 383, 18 S. Ct. 650, 42 L.Ed. 1078; Greene v. Couse, 127 N.Y. 386, 28 N.E. 15, 13 L.R.A. 206, 24 Am.St.Rep. 458; Yerby v. Gilham, 147 Ga. 342, 94 S.E. 246; Elder v. McClaskey, 6 Cir., 70 F. 529; Schmitt v. Traphagen, 73 N.J.Eq. 399, 69 A. 189, 133 Am.St.R. 739; Bybee v. Oregon & C. Ry. Co., C.C., 26 F. 586; Id., 139 U.S. 663, 11 S.Ct. 641, 35 L.Ed. 305; Coakley v. Perry, 3 Ohio St. 344; Hart v. Anaconda Copper Mining Co., 69 Mont. 354, 222 P. 419; Cobb v. Oldfield, 151 Ill. 540, 38 N.E. 142, 42 Am. St.Rep. 263.

It is our conclusion that upon all the issues, other than damages, the court should have instructed a verdict for the plaintiffs; that the judgment of the court below should be reversed and as to all issues except those aforesaid, judgment be rendered for plaintiffs; and that as to the issues of damages the case be remanded for further proceedings. It is accordingly so ordered.