## Case No. 17,967.

### WOOD v. WELLS et al.

[6 Fish. Pat. Cas. 382.] 1

Circuit Court, D. Connecticut. April, 1873.

PATENTS FOR INVENTIONS—RESTRICTED LICENSE—CONSTRUCTION—FORFEITURE.

1. Restricted license under patent construed.

2. Where defendants held a license under complainant's patent, granting them "the right, license, and privilege to manufacture and vend landau carriages, with the said invention attached," containing the provision that "the right, privilege, and license hereby granted, is not, nor is any part of the same, to be transferred or assigned, or in any manner imparted, to any other person or persons whatsoever; but the same shall be exercised solely, and only, by the licensees personally, or by workmen in their employment, in their own manufactory or manufactories, warehouse or warehouses;" and the further provision, "nor shall this license authorize or empower said licensees to sell; exchange, or in any manner dispose of any part, parts, or portions of carriages with, or fitted, or adapted for the said invention, or any carriage or carriages with, or adapted for, the said invention, otherwise than in a finished state, and ready for market,"—held, that these restrictions do not prohibit the defendants from procuring the patented fixtures to be made wherever they can be manufactured, and still less does it prohibit them from sending fixtures, already cast, to another establishment to be finished.

3. This license does not grant the right to deal in these fixtures as an article of merchandise.

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

4. If they sell them apart from the carriage, it is a violation of the patent, but not a breach of any condition of the license.

5. As a general rule, a violation of a patent does not work a forfeiture of a license under that patent. The exceptions to this rule are, where the licensee has assumed such a hostile attitude toward the patent as to amount to a repudiation of the right conveyed by the license.

6. When a license conveys a distinct right which has been once paid for, courts of equity, as well as courts of law, are bound to recognize it.

7. If this license had contained a condition, that the license should terminate if the licensee should in any wise infringe the patent, the court would give effect to it, subject to the influence of any special circumstances which might induce a court of equity to relieve against the forfeiture.

[This was a bill in equity by Charles B. Wood against Wells, Crittenden & Co.]

Final hearing on pleadings and proofs. Suit brought upon letters patent [No. 53,075] for an "improvement in landau carriage-doors," granted to Frederick Wood, March 6, 1866.

Henry T. Blake, for complainant.

John S. Beach, for defendants.

WOODRUFF, Circuit Judge. The complainant is the assignee of a patent for a distinct and specific fixture applicable to the doors of landau carriages. The defendants procured from the patentee, prior to the assignment to complainant, a license to use the patented improvement in the manufacture of their carriages. Subsequently, one of the defendants, conceiving that he had made an invention applicable to the same purpose, obtained a patent therefor, which, it is conceded, for the purposes of this case, does not entitle him to make the patented fixture, either because it is substantially the same as that previously invented, or because it was simply an improvement upon it; so that, before the defendant could make or use it, he must procure the allowance of the owner of the prior patent.

In this condition of things, it appears that one of the defendants sold, to a person named Lines, one or more of these fixtures, constructed under his own patent. It also appears that the defendants have procured these fixtures to be finished, polished, and hinged by an establishment in Bridgeport. It was claimed that the castings also were procured by the defendants to be made by others for the defendants' use. I do not deem it to be material to the decision of the case, but I do not find any evidence in the proofs that the defendants did not cast the fixtures themselves, procuring them to be finished, as already stated, by others.

The bill charges that the sale of the fixtures to Lines, and the procuring of fixtures to be finished by others, was a violation of the license granted to the defendant; and the bill seeks a decree, declaring that the license is null and void, and has been forfeited by the defendants by the sales made by the

defendants to Lines, and by their causing fixtures to be finished at a manufactory not their own, and seeks a further decree, restraining the parties, by injunction, from further making and selling fixtures, either under the license or otherwise, and for an account of profits.

It becomes material, therefore, to ascertain what the rights of the defendants are under the license, upon the construction and effect of which the whole question depends. This paper is, in brief, for a consideration in gross paid by the defendants to the patentee. a conveyance or grant of "the right, license, and privilege to manufacture and vend landau carriages. with the said invention attached thereto, under and according to the letters patent, for, during, and unto the full end of the term for which said letters patent are granted; but the right, privilege, and license hereby granted is not, nor is any part of the same, to be transferred or assigned, or in any manner imparted, to any other person or persons whatsoever, but the same"—i. e. the privilege of making and selling landau carriages, with the improvement attached thereto—"shall be exercised solely and only by the licensees personally or by workmen in their employment, in their own manufactory or manufactories, warehouse or warehouses." And then, to make this restriction more plain and definite, it is further stated, "nor shall this license authorize or empower said licensees to sell, exchange, or in any manner dispose of any part, parts, or portions of carriages, with or fitted or adapted for the said invention, or any carriage or carriages with or adapted for the said invention, otherwise than in a finished state and ready for market."

Now, in my opinion, the meaning of this license is this, and simply this: "You, the licensees, may make carriages and apply the patented fixtures thereto, but you shall only apply these fixtures in your own establishment, and you shall in no wise farm out this right to others; and, to secure this condition against evasion, you shall not make parts of carriages adapted to the use of this invention and sell them to others."

Neither by the terms nor the good sense of this paper, nor by anything implied therein, does it prohibit the defendants from procuring these fixtures to be made wherever they can be manufactured, and still less does it prohibit them from sending fixtures already cast to another establishment to be finished; so that I can not hold that the sending of such fixtures to the Bridgeport company to be finished, polished, and hinged, or jointed, is any violation of this license.

On the other hand, the license grants to the defendants the right to attach the invention to landau carriages, but does not grant the right to deal in the fixtures as articles of merchandise. As to this, the defendants stand in the same situation as persons having no license. If they sell, they sell in violation of the patent, but not in breach of any condition of the license. They stand as any other person does who violates the patent without authority. That brings me to the second question discussed before me, which is, whether, where a patentee has granted a license, a violation of the patent, by abuse of the patented privilege, outside of the license, works a forfeiture of the right conveyed. As a general rule, I have no hesitation in saying that it does not. I do not say that there might not be cases in which it might have that effect, but it could only be where the licensee has taken a stand against the patent, and has assumed such a hostile attitude toward it as amounts to a repudiation of the right conveyed by the license. The mere fact that, in the course of business, the licensee has infringed the patent, will not work a revocation of the license, and especially in a case where the license covers a distinct and specific privilege, which has been paid for, once for all, and conveys, without further fee or consideration, rights which are fixed and definite. Such a privilege, conveyed absolutely and for consideration paid, becomes a clear vested right, and to the extent to which it has become so vested, a court of equity, as well as a court of law, is bound to recognize it.

A case lately decided in Vermont (Steam Cutter Co. v. Sheldon [Case No. 13,331]) presented, in some of its features, striking analogies to the one before me. The defendant in that case had purchased, and paid for the right to use, one machine for cutting stone, and was licensed to use five other machines, upon paying to the patentee prices named in the license. He, however, did not do this. He procured the one machine, but thereafter, instead of claiming or exercising the right to use the other five machines, on paying the price of the privilege to the patentee, he bought five machines from an infringer in defiance of the patent. A suit having been determined against his vendor, in which it appeared that the machines were infringements, he became alarmed, and tendered to the patentee the sums named in the license. The court held that, while he was entitled to use the first machine, for which he had paid, he had repudiated the license as to the others, and had assumed such a position of hostility toward the patent, that he could no longer avail himself of his privilege of purchase.

The present license was paid for by a sum in gross, and was paid for once for all. If it had contained a condition, that the license should terminate if the licensee should in any wise infringe the patent, no doubt the court would give effect to it. subject of course to the influence of any special circumstances which might induce a court of equity to relieve against the forfeiture. But the license contains no such proviso. The grant is absolute in this respect.

Now, although the infringer has not been

put upon the stand to testify as to his motives in making the sale to Lines, yet the explanation, as it appears in the proof, seems to be this, that one of the defendants, having procured a patent for an improvement upon this device, stated to the person to whom he made the sale, "I have a clean patent from the patent office, and have a right to sell my own fixture;" supposing, apparently, that his patent conferred the right to dispose of all that was described or shown in it. In this he was mistaken; but that sale, of some four or five fixtures, was his only violation of the patent. We can not pronounce that transaction of such a nature as to call for the interference of a court of equity, further than to enjoin the defendant from transactions of that character hereafter, and to order an account of the profits made upon the fixtures actually sold.

Decree accordingly.