# BYBEE *v.* OREGON AND CALIFORNIA RAILROAD COMPANY.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

No. 276.   Argued March 31, 1891.—Decided April 20, 1891.

The grant of "lands to aid in the construction of a railroad and telegraph line from the Central Pacific Railroad, in California, to Portland in Oregon," made by the act of July 25, 1866, 14 Stat. 239, c. 242, was a grant *in præsenti;* and the provision in section 8 of that act that in case the companies should fail to complete the road on or before July 1, 1875, this act shall be null and void, and all the lands not conveyed by patent to said company or companies, as the case may be, at the date of any such failure, shall revert to the United States, is a condition subsequent, of which only the United States can take advantage.

Under the act of July 26, 1866, 14 Stat. 251, c. 262, " granting the right of way to ditch and canal owners over the public lands," no right could be acquired to any portion of the public lands until the actual taking possession of the same for the purpose of constructing a ditch.

A conveyance by deed of a perpetual right in land, for a solid consideration therein expressed, without any covenant for the payment of rent or the redelivery of possession, creates the relation of grantor and grantee between the parties.

The grantee in a deed of conveyance is not estopped to deny the title of his grantor.

The plaintiff in error, under the act of July 26, 1866, 14 Stat. 251, c. 262, constructed a ditch over lands granted to the defendant in error for a railroad under the act of July 25, 1866, 14 Stat. 239, c. 242. The defendant in error, under a misapprehension of its legal rights, received a deed from the plaintiff in error, conveying a license to enter upon said ditch and construct its road over the same, for the consideration of $250 paid by defendant in error to plaintiff in error, and upon condition against impairing or destroying said ditch. The plaintiff in error sued the defendant in error for so constructing its road as to permanently obstruct and destroy his ditch. *Held,* that the defendant in error by accepting the deed, was not estopped from denying the title of the plaintiff in error, or from asserting the invalidity of the covenant into which it had inadvertently entered.

THIS was an action originally begun in the state court for Jackson County, Oregon, and removed to the Circuit Court of the United States upon the petition of the defendant, upon the

ground that the case involved the validity of conflicting grants of land from the United States. The plaintiff sued to recover for damages to a water ditch and water right, occasioned by the construction of the defendant's road. His complaint alleged, in substance, that on the third of September, 1883, he was the owner of an undivided half of a certain water ditch and water right on the south side of Rogue River, in Jackson County, and in lawful possession of the same, as tenant in common with one Daniel Fisher; that upon this day the plaintiff and Fisher, for the consideration of $250 paid to them, executed a deed to defendant of a right to construct and operate its railroad and telegraph line across the said water ditch, but upon condition that it should not in any way destroy or injure the same, or obstruct their use and enjoyment of it as a means of conveying water through the same; and that the defendant accepted the deed, received possession of the water ditch and constructed its railroad and telegraph line across the same, but in such a manner as to permanently obstruct and destroy it, and render it impossible to use it for the conveyance of water, and refused to make any compensation to the plaintiff for his interest therein.

The answer of the defendant, in substance, denied the ownership of plaintiff and Fisher in any portion of the water ditch or water right alleged to have been destroyed by the defendant, and denied their lawful possession thereof. It further denied that the deed set forth in the complaint contained any condition whatever, or that defendant ever assented to any condition connected with such deed, or received possession of the ditch under this deed; and alleged as a separate defence to the complaint that it was incorporated to construct and operate a railroad and telegraph line from Portland, in Oregon, and running thence southerly through the Willamette, Umpqua and Rogue River valleys to the California line on the southern boundary of Oregon. That by section three of an act of Congress, approved July 25, 1866, 14 Stat. 239, c. 242, there was granted to it a right of way through the public lands of the United States, to the extent of one hundred feet in width on each side of the said railroad where it might pass

through such lands.  That the lands through and over which the portion of the said water ditch, alleged to have been injured by defendant, was constructed and is situated, were at the date of said act public lands of the United States, over and upon which the defendant had the right, by virtue of the grant made in that act, to locate its right of way and construct its railroad and telegraph line.  That in locating said right of way and constructing said road it became necessary for the defendant to appropriate to its use one hundred feet in width on each side of its road, through and over which said lands a portion of said water ditch alleged to have been injured by defendant was located and constructed, and that the defendant did accordingly locate its right of way over the ground through which the water ditch was dug, and constructed its road over such right of way, and that any injury which may have been done to said ditch was done in the course of such construction.

The answer further alleged that on May 17, 1879, the said Daniel Fisher attempted to appropriate to his own use, under the mining laws of the United States, a portion of said right of way, and constructed thereon the said ditch ; that the only claim of right ever made by Fisher to locate and dig that portion of such ditch was obtained by virtue of his pretended compliance with certain provisions of the mining laws; that he had no other interest or ownership in such land than the right so acquired, and plaintiff's only interest therein was acquired under and through said Fisher ; and that defendant took nothing by the deed mentioned in the complaint, as it then owned, by virtue of the said grant of the United States, all the rights and property pretended to be conveyed by said deed, and never received any consideration whatever for the sum alleged to have been paid by it for such pretended conveyance.

To this separate defence in the answer the plaintiff demurred, upon the ground (1) that it did not state facts sufficient to constitute a defence.   (2) That the facts stated in the complaint estopped the defendant from setting up the right of way mentioned in such defence, or any benefit under the Congressional

grant of the right of way of July 25, 1866, set forth in such defence. (3) That defendant had forfeited and lost all its right under such grant over the land where the ditch was situated, by its failure to complete its railroad on or before the first day of July, 1875, and had at no time since owned any right or interest in such land or right of way over the same.

The court below overruled the demurrer in an opinion reported in 11 Sawyer, 479, and 26 Fed. Rep. 586, and the plaintiff not desiring to plead further, entered a final judgment in favor of the defendant, to reverse which the plaintiff sued out this writ of error.

*Mr. John H. Mitchell* for plaintiff in error.

It is conceded that but for the qualifying provisions of section 8 in the act of July 25, 1866, this grant must be held to be a grant *in præsenti*, under and by virtue of which the lands granted passed directly as of the date of the grant to the company; and that the conditions of the grant in such event are conditions *subsequent*, and in such case the grant can only be defeated by a failure to comply with the conditions subsequent, and in which case there must be a reëntry upon the part of the government. But it is respectfully insisted that the words of *present grant* in the second section of the act are so qualified by the provisions of section 8, that upon a proper and fair construction of the act *as a whole*, the conditions, and all the conditions, so far as they relate to the right of way and the completion of the road within a certain time, must be held to be conditions *precedent*, and not conditions *subsequent*. And not only so, but being conditions *precedent*, such failure to comply with them within the time required by the act, especially in view of the provision that in such event the act should be *null and void*, operated *ipso facto* as a termination of all right to acquire any further interest in any lands not then patented.

It will be observed by the court that the provisions of this act as to the effect of a failure to comply with the conditions, whether they be regarded as conditions subsequent or condi-

tions precedent, are essentially different in phraseology and in legal effect from the great body of Congressional grants to railroad companies.

A striking similarity, however, will be found between the act under consideration in this respect and the act granting lands to aid in the construction of railroads in the Territory of Minnesota, and which came under consideration in this court in the case of *Rice* v. *Railroad Co.*, 1 Black, 358, and in which case this court held that although words of present grant were used in the granting section which, had they stood alone, would have passed the title as of the date of the grant, they were so qualified by subsequent provisions of the act as to prevent the same from being a present grant. This case was approved in *St. Paul & Pacific Railroad* v. *Northern Pacific Railroad, ante,* 1.

The granting words in the Minnesota act and those in the grant under consideration are exactly alike, but as in that case the court found in the subsequent language an intent on the part of Congress to limit and modify the meaning of the words " that there shall be and is hereby granted," so in this case we have the same intent expressed in somewhat similar but much more emphatic language, which makes the conclusion irresistible that no *present estate* was granted or intended to be granted by Congress to these railroad companies.

In presenting this case counsel are not unmindful of the rulings of this court — notably in the case of *Railroad Co.* v. *Baldwin,* 103 U. S. 426 — giving construction to an act of Congress, then under review, granting right of way to a railroad company somewhat similar to the act making grant to the defendant in so far as it relates to the nature and effect of the grant of right of way over the public domain ; and in discussing this case there is no disposition to contest the correctness of the rule laid down in the case referred to, and perhaps in some other cases since that time, as applicable to the particular grants referred to, and as applicable to the facts presented in connection therewith, as to progress made by the companies respectively under those grants where rights of settlers were supposed to have attached.

Our contention is that the act of July 25, 1866, under which the defendant claims, is radically different from the act discussed in 103 U. S. *supra*, and also that the route or line of road under the former had not, as in the adjudicated cases, been established. The act is different in this, as we have seen, that it provides *in terms*, not merely that on a failure to build the whole of the road by July 1, 1880, all lands not conveyed by patent to said company at the date of any such failure shall revert to the United States, but *also* that the *act* itself shall be "*null and void*." No such clause as this appears, so far as I have been able to examine, in any of the other acts of Congress making grants of public lands or right of way over the public lands to any railroad company save in the one amendment, *supra*. It was clearly the opinion of Congress, it would seem, that in the event of a failure upon the part of the company to build the whole road within the time specified, viz., July 1, 1880, to take it out of the power of the company to do a further solitary act under or in pursuance of the act of Congress. It was clearly the intention of Congress that the company in such a case should be entitled to the lands patented to it, but in so far as any right upon the part of the company was concerned to enter upon the public domain, or any part of it, for the purpose of locating or constructing its road *after* such failure to complete the road within the time specified, it was the intention of Congress to destroy it by declaring, as it did, that the *act itself* should be *null and void*. In other words, the act, taken as a whole, simply conferred a *power* upon the company, to be exercised within a certain time and upon certain conditions. A failure to exercise the power within the time was an end of the whole business, and then the act itself under which the company could act ceased to exist, because the power that created it declared that it should then be *dead* — null and void.

This is not the case, therefore, it is respectfully insisted, of an *estate vested* under a *present grant*, and subject to forfeiture for breach of a condition subsequent, but requiring further proceedings to enforce the penalty.

But it is the case of a legislative power not attempted to be

exercised until, by the very terms of the instrument creating it, the time within which it could be exercised had expired.

If this power to "lay out, locate and construct" had been exercised during the prescribed term of its existence, it would have given effect to the granting words in the original act and vested the legal title to the two-hundred-feet right-of-way strip in the defendant.

But as none of these steps were taken during the continuance of the power, no estate ever vested in defendant, and there is no ground for the application of this doctrine.

That the authority to act terminated with the expiration of the time fixed by the amendment of June 25, 1868, is clear from the language used, and well settled by judicial decisions. *In the matter of the Brooklyn, Winfield &c. Railway Co.,* 72 N. Y. 245; *Brooklyn Steam Transit Co.* v. *Brooklyn,* 78 N. Y. 524; *Union Hotel Company* v. *Hersee,* 79 N. Y. 454; *Farnham* v. *Benedict,* 107 N. Y. 159.

It is conceded in the pleadings, and also by the court below in the opinion, that the Oregon and California Railroad Company, defendant, had not completed its road, even so far as the location of the premises in question, within the time prescribed by Congress for its completion; nor was it completed to that point, as clearly appears, on September 3, 1883, as it was on that date the defendant purchased from plaintiff and his tenant in common the right to construct and operate its road at a point between the termini thereof across the ditch of the plaintiff.

The same rule was recognized as correct with reference to the provision in a special act, "the franchises thereby granted shall be *null and void,* unless the corporation shall commence the work of constructing the hotel within two years from the passage of this act, and complete the same within four years from the time of commencing the construction thereof;" but held inapplicable in view of an amendment extending time for the performance of these acts. *Union Hotel Company* v. *Hersee,* 79 N. Y. 454, 457, 459. See also *Brooklyn, Winfield & Newtown Railway,* 81 N. Y. 69; *Farnham* v. *Benedict,* 13 N. E. Rep. 784; *Railroad Co.* v. *Alling,* 99 U. S. 463.

The decision in *Railroad Co.* v. *Baldwin*, 103 U. S. 426, cited and relied upon below, involves no such issue. There the railroad company had located its right of way within the time prescribed, and while it still had the power to do so, and the court held that such location related back to the date of the act making the grant, and cut out intervening claims.

But the effect of such authorized location was to vest an estate in the lands covered by the right of way in the railroad company and bring the case within the rule as to forfeiting vested interests for breach of subsequent conditions. That a valid location pursuant to the authority conferred by the act making such a grant is necessary to vest an interest in the particular tracts of land is undeniable. This proposition is conceded everywhere. *Van Wyck* v. *Knevals*, 106 U. S. 360.

An expression in the opinion of this court in *Schulenberg* v. *Harriman*, 21 Wall. 44, is cited in the opinion of the court below in the present case as favoring the conclusion there announced. But there was no issue in that case involving the point, and what is said there as to the continuance of a power to sell in the face of an explicit prohibition in the act creating the power is simply *obiter*.

The second ground relied on by plaintiff to avoid the defence interposed is that of estoppel.

The complaint alleges, and the separate defence in the answer demurred to admits, in effect, that defendant went into possession of the portion of plaintiff's ditch crossed by its railroad track under a deed from plaintiff and his tenant in common for the consideration of $250 paid, and assenting to the condition therein against impairing or destroying said ditch, the only right conveyed being a license "to enter on said ditch and construct and operate its railway over the same" upon said condition. The complaint further alleges that defendant utterly destroyed the ditch in violation of this condition. And this, too, the defence admits.

The acceptance of possession under this deed, it is submitted, created the relation of landlord and tenant between them, and not that of vendor and vendee, so far as the doctrine of estoppel is concerned. The plaintiff still retained his interest in the

premises, and the defendant assumed the obligation of preserving his ditch and doing nothing to injure it or obstruct the flow of water through the part thus delivered into its possession. In these stipulations and conditions there was an agreement, in *legal effect*, that the violation of these essential conditions by the defendant was an event upon the occurrence of which there was to be a surrender of that possession. *Osterhout* v. *Shoemaker*, 3 Hill, 513.   See also *Blight's Lessee* v. *Rochester*, 7 Wheat. 535; *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35; *Jackson* v. *Ayers*, 14 Johns. 224; *Jackson* v. *Walker*, 7 Cowen, 636; *Phelan* v. *Kelly*, 25 Wendell, 388; *Morrison* v. *Bassett*, 26 Minnesota, 235.

But, conceding for the argument that the relation of landlord and tenant did not exist, but rather that of vendor and vendee, we still insist the defendant is, under the exceptional circumstances of this case, estopped from controverting plaintiff's title, under which it took possession of plaintiff's ditch and destroyed it, contrary to its agreement.

The defendant having accepted the deed, is bound by the terms of the deed as effectually as though it had been sealed and executed by him.

A deed executed by one party only, but containing a covenant on the part of the other to perform certain acts, binds the latter, if he accepts the deed and takes possession under it, as effectually as if he had signed it. *Spalding* v. *Hallenbeck*, 35 N. Y. 204.

The old common law rule that the estoppel cannot be broader than the deed, and that in unilateral instruments to which one party only sets his seal the grantor only is estopped, while the grantee is not, is not applicable in our system of jurisprudence, and all the authorities are to the contrary. *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35; Bigelow on Estoppel, 356, and authorities there cited; Coke Litt. 47.

It will be perceived that in this case every reason upon which the right of a vendee to deny his vendor's title is based is lacking.   It cannot be said in this case that the vendee owes no faith or allegiance to the vendor; neither can it be said that the title of the vendor is extinguished; nor can

it with truth be said, as in an ordinary case of vendor and vendee, that the vendee, the defendant, does no wrong by treating plaintiff as a stranger to the title by controverting that title.

The attempt in this case upon the part of the defendant to deny plaintiff's title by setting up another in itself is similar to the case of a grantee of lands, while holding possession under his grantor, attempting to dispute his grantor's title for the purpose of escaping the payment of the purchase price of the same; and this the courts have universally held will not ᵔ permitted. *Peters* v. *Bowman,* 98 U. S. 56`; *Robertson* v. *Pickerell,* 109 U. S. 608–615; *McCanihe* v. *Fales,* 107 N. Y. 404; *York* v. *Allen,* 30 N. Y. 104; *Crum* v. *Wright,* 97 Missouri, 13; *Munford* v. *Pearce,* 70 Alabama, 452; *Marsh* v. *Thompson,* 102 Indiana, 272.

While the general rule is well established that the grantee ordinarily is not estopped to deny the grantor's title, this rule is not applicable to a case in which the only title asserted by the grantee is the precise title he has acquired from the grantor, nor to a case where both parties claim from a common source, and the title is identical in that source. Herman on Estoppel, vol. 2, § 603, p. 738; *Wilcoxon* v. *Osborn,* 77 Missouri, 621.

The defendant is not only the tenant of plaintiff in respect of the estate conveyed to it, but is tenant in common with plaintiff as to the ditch property and water rights in which each held a separate estate, but joint possession.

By acceptance of the deed by defendant from plaintiff and its entering into joint occupancy with the plaintiff of the ditch and the water rights covered by the deed and in pursuance of it, the defendant became not only the tenant of the plaintiff as to the estate or interest purchased, but it and plaintiff became tenants in common, each having a right to the use in different forms of the same identical piece of property. This relation having been established, it is not within the power of the defendant, while still continuing in such possession and use, to contest the title of the plaintiff by which he was admitted to it, or set up an outstanding title as against his tenant in common, who is *also* his landlord in respect of the

estate transferred by the deed to defendant. *Phelan and Wife* v. *Kelly,* 25 Wend. 389; *Jackson* v. *Hinman,* 10 Johns. 292; *The Proprietors of Braintree* v. *Battles,* 6 Verm. R. 395.

*Mr. J. Hubley Ashton* (with whom was *Mr. Charles H. Tweed* on the brief) for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

Two questions are presented by the record in this case. First, whether the defendant lost the power to take possession of its right of way by its failure to construct its road within the time limited by the acts of Congress. And second, whether it is estopped to claim that it took nothing under its deed from the plaintiff, and may set up a separate and independent title in itself.

1. By section 2 of an act of Congress approved July 25, 1866, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from the Central Pacific Railroad in California, to Portland, in Oregon," 14 Stat. 239, there was granted to such company organized under the laws of Oregon, as the legislature of said State should thereafter designate, to aid in the construction of its road, "every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile," not otherwise disposed of by the United States, with the right to select from the odd sections, within ten miles beyond the limits of the granted lands, other lands in lieu of any which might have been so disposed of prior to the location of the line; and by section 3 there was granted to it the right of way through the public lands, to the extent of 100 feet in width on each side of said railroad, where it might pass over the public lands, including all necessary grounds for stations, etc.

By section 6 the companies were required to file their assent to the act within one year; to complete the first twenty miles within two years, and at least twenty miles in each year thereafter, and the whole on or before the 1st of July, 1875.

Section 8 provided that in case the company should not complete the same as provided in section 6, "this act shall be null and void, and all the lands not conveyed by patent to said company or companies, as the case may be, at the date of any such failure, shall revert to the United States;" but by a subsequent act of June 25, 1868, 15 Stat. 80, the time for completing the road was extended to July 1, 1880.

That the company did not complete its road by the time limited by the act of 1868, namely, July 1, 1880, is conceded by both parties, and is evident from the fact that the defendant took this deed from the plaintiff on December 3, 1883, wherein, for the consideration of $250, it was agreed that the defendant might enter upon plaintiff's water ditch, and construct and operate its railroad and telegraph line over the same. Indeed, it appears to have been a matter of such common knowledge in the State of Oregon that the road was not constructed until after 1880, that the court below was inclined to take judicial notice of the fact.

The act making the grant in aid of this road does not, in its words of conveyance, differ materially from a large number of similar acts passed by Congress in aid of the construction of roads in different parts of the West, which have been considered by this court as taking effect *in præsenti*, although the particular lands to which the grant is applicable remain to be selected and identified when the road is located, and the map is filed with the Secretary of the Interior. The act then operates as a grant of all odd-numbered sections within the limits, except so far as they may have been in the meantime "granted, sold, reserved, occupied by homestead settlers, preempted or otherwise disposed of." And in all the cases in which the question has been passed upon by this court, the failure to complete the road within the time limited is treated as a condition subsequent, not operating *ipso facto* as a revocation of the grant, but as authorizing the government itself to take advantage of it, and forfeit the grant by judicial proceedings, or by an act of Congress, resuming title to the lands. Thus in *Schulenberg* v. *Harriman*, 21 Wall. 44, the act of Congress granting the lands provided in what manner the sales should

be made, and enacted that if the road were not completed within ten years no further sales should be made, and the lands should revert to the United States. That was decided to be no more than a provision that the grant should be void, if the condition subsequent were not performed. Said Mr. Justice Field, in that case: "It is settled law that no one can take advantage of the non-performance of a condition subsequent annexed to an estate in fee, but the grantor or his heirs, or the successors of the grantor if the grant proceed from an artificial person; and if they do not see fit to assert their right to enforce a forfeiture on that ground, the title remains unimpaired in the grantee. . . . And the same doctrine obtains where the grant upon condition proceeds from the government; no individual can assail the title it has conveyed on the ground that the grantee has failed to perform the conditions annexed." p. 63. The doctrine of this case was approved and reapplied to a similar grant to the St. Joseph and Denver City Railroad, in *Van Wyck* v. *Knevals*, 106 U. S. 360. In *St. Louis &c. Railway Co.* v. *McGee*, 115 U. S. 469, 473, it was said by Chief Justice Waite to have been often decided "that lands granted by Congress to aid in the construction of railroads do not revert after condition broken until a forfeiture has been asserted by the United States, either through judicial proceedings instituted under authority of law for that purpose, or through some legislative action legally equivalent to a judgment of office found at common law." "Legislation to be sufficient must manifest an intention by Congress to reassert title and to resume possession. As it is to take the place of a suit by the United States to enforce a forfeiture, and judgment therein establishing the right, it should be direct, positive and free from all doubt or ambiguity." The manner in which this forfeiture shall be declared is also stated in *United States* v. *Repentigny*, 5 Wall. 211, 267; *Farnsworth* v. *Minnesota & Pacific Railroad Co.*, 92 U. S. 49, 66; *McMicken* v. *United States*, 97 U. S. 204, 217.

An effort is made to distinguish this case from *Schulenberg* v. *Harriman*, in the fact that the act not only declares that the lands "shall revert to the United States," but that the act

itself "shall be null and void," from which it is argued that it was the intention of Congress that the failure to complete the road should operate *ipso facto* as a termination of all right to acquire any further interest in any lands not then patented. It is true that the language of this statute differs somewhat from that ordinarily employed by Congress in connection with similar grants; but the declaration that the lands "shall revert to the United States" is practically equivalent to a declaration that the act granting such lands shall cease to be operative if the company fail to complete its road within a specified time, or as Mr. Justice Field puts it in *Schulenberg* v. *Harriman:* "The provision in the act of Congress of 1856, that all lands remaining unsold after ten years shall revert to the United States, if the road be not then completed, is no more than a provision that the grant shall be void if a condition subsequent be not performed." The title to the land having vested in the company by virtue of the grant, the provision that it shall complete the road within a certain number of years does not cease to be a condition subsequent by declaring that the act shall be null and void, if the condition be not complied with.

And the law is well settled that it is only the grantor, or those in privity with him, who can take advantage of the forfeiture. Indeed, the provision that "this act shall be null and void" is immediately followed by words indicating that it is only to a limited extent, that is, so far only as lands not already patented are concerned, that the nullity of the act extends, the language being: "This act shall be null and void, and all the lands not conveyed by patent to said company or companies, as the case may be, at the date of any such failure, shall revert to the United States." As to lands theretofore patented the act continued in full force and effect. As remarked by the learned judge of the court below: "It is to become 'null' only so far as to allow the grantor to resume the grant on a failure to comply with the condition, and then only as to the lands remaining unpatented or unearned; and, but for this qualification the grant might have been wholly resumed or forfeited for any failure to comply with the condi-

tion, even in the construction of the last mile. And this construction of the section is in harmony with the general purpose of the act and the policy of Congress in making the grant." A condition that would put it beyond the power of the company to build the last mile of its road by the aid of the granted lands is manifestly so harsh and unjust, that the breach of such condition ought not to be treated as a forfeiture, unless the language of the act be so clear and unambiguous as to admit of no other reasonable construction.

Counsel for plaintiff has called our attention to several cases decided by the Court of Appeals of New York which doubtless have a bearing upon this question, but which, when carefully examined, are readily distinguishable. *Matter of Brooklyn &c. Ry. Co.*, 72 N. Y. 245; *Brooklyn Steam Transit Co.* v. *City of Brooklyn*, 78 N. Y. 524; *Union Hotel Company* v. *Hersee*, 79 N. Y. 454; *Farnham* v. *Benedict*, 107 N. Y. 159. In these cases the legislative act did not avoid the grant upon the nonperformance of the condition subsequent, but declared that the corporate existence and powers of the company to act were at an end. In other words, it fixed a time for the expiration of the charter, and, when that time arrived, the corporation lost its power to act or to do any business beyond such as was necessary in the process of winding up. It was not so much a case of forfeiture as of loss of legal entity, or, as expressed in the language of the Court of Appeals in the case in 78 N. Y., "In case of non-compliance, the act itself ceases to have any operation, and all the powers, rights and franchises thereby granted were deemed forfeited and terminated. There was to be not merely a case of forfeiture, which could be enforced by an action instituted by the Attorney General, but the powers, rights and franchises were to be taken and treated as forfeited and terminated. At the end of the time limited the corporation was to come to an end, as if that were the time limited in its charter for its corporate existence."

More directly in point is the case of *Oakland Railroad Co.* v. *Oakland, Brooklyn &c. Railroad Co.*, 45 California, 365. In this case an act of the legislature granting a corporation the right of way to lay a street railroad track provided "that,

if the provisions of this act are not complied with, then the franchise and privileges herein granted shall utterly cease and be forfeited." A breach of this condition was held *ipso facto* to forfeit the franchises of the corporation. A distinction was drawn in this case between forfeitures at common law, which did not operate to divest the title of the owner until, by proper judgment in a suit instituted for that purpose, the rights of the State had been established, and a forfeiture declared by statute, in which case the title to the thing forfeited vests immediately in the State, upon the happening of the event for which the forfeiture is declared.

The doctrine of these cases has not been universally accepted, however, and in several States, notably in Massachusetts, it has been distinctly repudiated. Thus, in *Briggs* v. *Cape Cod Ship Canal Company*, 137 Mass. 71, the act of incorporation of a canal company provided that, if a certain amount were not expended in the actual construction of the canal within four months from the passage of the act, the " corporation shall thereupon cease to exist;" and, further, that, if a certain other amount were not deposited by the company with the treasurer of the Commonwealth within the same time, the corporation should thereupon cease to exist. It was declared in the opinion of the court to be " too well settled to admit of discussion, that a corporation can be judicially determined to have ceased to exist only in a suit to which the Commonwealth is a party. The act of incorporation is a contract between the Commonwealth and the corporation : Whether the corporation has complied with the conditions is a question of fact to be judicially determined. The Commonwealth may waive a strict compliance with the terms of the act, and may elect whether it will insist upon a forfeiture, if there has been a breach of condition;" citing a number of prior cases in the same State.

In *Atchafalaya Bank* v. *Dawson*, 13 La. 497, an act for the incorporation of a bank provided that upon the suspension or refusal of payment in specie for more than ninety days, " the charter shall be *ipso facto* forfeited and void." But it was held that until the forfeiture was judicially decreed, neither the

forfeiture nor the cause could be inquired into in another suit,. nor could the existence of the corporation be questioned in-- cidentally or collaterally.   To the same effect is the case of *Lagrange & Memphis Railroad Company* v. *Rainey*, 7 Cold-- well, 420.   In this case it was held that if an act of incorpora- tion fixes a definite time in which the charter shall expire, when the time for this expiration arrives the corporation is: dissolved.   But if its continuance beyond a fixed time is made to depend upon the performance of a given condition, the non- performance of the condition is a mere ground of forfeiture. " This, however, can only be taken advantage of by the State in a, proceeding in the nature of a *quo warranto*, and the existence of the corporation can never be collaterally called in question."   It is not, indeed, always easy to determine whether a condition be precedent or subsequent; it must depend wholly upon the intention of the parties as expressed. in the instrument, and the facts surrounding its execution.   If the condition does not necessarily precede the vesting of the es- tate, or if from the nature of the act to be performed and the time required for its performance, it is evident that the inten- tion of the parties is that the estate shall vest, and the grantee shall perform the act after taking possession, then the condi- tion is treated as subsequent, and there is no forfeiture with- out a reëntry by the grantor, or, in the case of the State, without some action on its part manifesting an intention to resume its title.   In the case under consideration, the act, as already stated, takes effect as a present grant and the provision for a forfeiture in case the company fails to complete its road is clearly a condition subsequent.

Upon the whole we think there is nothing to distinguish this case from *Schulenberg* v. *Harriman*, and that the learned judge of the court below was correct in holding that the rail- road company had not forfeited its right to construct its road by failure to complete the same within the time limited.

The distinction between a right of way over the public lands, and lands granted in aid of the construction of the road, is important in this connection.   As to the latter, the rights of settlers or others who acquire the lands by purchase or

occupation between the passage of the act and the actual loca-
tion and identification of the lands, are preserved unimpaired,
while the grant of the right of way is subject to no such con-
dition ; and in the construction given by this court to a similar
grant in *Railroad Company* v. *Baldwin*, 103 U. S. 426, a per-
son subsequently acquiring any part of such right of way takes
it subject to the prior right of the railroad company.   As re-
marked by the court in that case, p. 430, "If the company
could be compelled to purchase its way over any section that
might be occupied in advance of its location, very serious
obstacles would be often imposed to the progress of the road.
For any loss of lands by settlement or reservation, other lands
are given ; but for the loss of the right of way by these means,
no compensation is provided, nor could any be given by the
substitution of another route."

The only title which the plaintiff seems to have had to the
land in question was by virtue of an appropriation or occupa-
tion of the same under the act of July 26, 1866, "granting the
right of way to ditch and canal owners over the public lands,
and for other purposes."   14 Stat. 251.   But as his occupation
dates only from May, 1879, long after the defendant company
had become entitled to its right of way over these lands by
virtue of the act of July 25, 1866, his claim was clearly sub-
ordinate to that of the railroad company.   Under this act the
plaintiff acquired no right to any portion of the public lands
until his actual taking possession of the same for the purpose
of constructing a ditch, and in so doing he took the risk of
encroaching upon the right of way which the railroad com-
pany might thereafter select for the purposes of their road.
This very question arose in the Supreme Court of California,
in the case of *Doran* v. *Central Pacific Railroad Company*, 24
California, 245, in which the court observed, p. 259, that "the
grant by Congress of the right of way over any portion of
the public land, to which the United States have title, and to
which private rights have not been attached under the laws
of Congress, vests in the grantee the full and complete right
of entry for the purpose of enjoying the right granted, and no
person claiming in his own right any interest in the lands can

prevent the grantee from entering, in pursuance of his grant, or can recover damages that may necessarily be occasioned by such entry." We regard this exposition of the law as sound, and the case as exactly in point in this connection.

2. With regard to the question of estoppel, the complaint alleges that the defendant went into possession of that portion of the plaintiff's ditch across which its road was constructed, under a deed from plaintiff and his tenant in common, for a consideration of $250 paid, and assented to the condition therein contained against impairing or destroying said ditch, the only right conveyed being a license "to enter on said ditch and construct and operate its road over the same," upon such condition. The contention of the plaintiff is that in receiving this deed and entering into possession the relation of landlord and tenant was created between them, and not that of vendor and vendee, so far as the doctrine of estoppel is concerned. But as the deed was the conveyance of a perpetual right for a solid consideration therein expressed, and there was no covenant for the payment of any rent, nor for the redelivery of possession, we think it should be regarded as creating the relation of grantor and grantee between the parties thereto. We have already found that the title of the company to its right of way upon the location of its route related back to the date of the act, and hence that when it took possession of the land in question plaintiff had no title thereto which he could set up against the company. Had the defendant not accepted the deed from the plaintiff, it might, under our ruling upon the first point, have treated him as a trespasser. The real question then is, whether the defendant is placed in a worse position by having accepted the deed from a party who had no title to the premises he assumed to convey — the defendant having taken the conveyance under a mistaken view of the law applicable to the case.

It is conceded that, as a general principle, the grantee in a deed of conveyance is not estopped to deny the title of his grantor, and unless this case be an exception to this rule, it will necessitate an affirmance of this judgment. The rule was first applied by this court in the case of *Blight's Lessee* v.

*Rochester,* 7 Wheat. 535, in favor of the grantee, who was permitted to show that the person from whom he derived title was an alien, and, under the laws then existing, incapable of transmitting by inheritance the title to lands in this country. In *Merryman* v. *Bourne,* 9 Wall. 592, it was stated that the vendee "holds adversely to all the world, and has the same right to deny the title of his vendor as the title of any other party;" and in *Robertson* v. *Pickrell,* 109 U. S. 608, it was held, in an elaborate opinion by Mr. Justice Field, that defendants, who held under a deed of a life estate, were not estopped from setting up a superior title. Cases in the state courts to the same effect are *Comstock* v. *Smith,* 13 Pick. 116; *Osterhout* v. *Shoemaker,* 3 Hill, 513; *Clee* v. *Seaman,* 21 Michigan, 287; and *Sparrow* v. *Kingman,* 1 N. Y. 242.

Upon the other hand, there are doubtless some exceptions to the rule arising out of circumstances which would render the repudiation of the grantor's title "a breach of good faith and common honesty" on the part of the grantee. Thus he cannot refuse to pay the consideration named in his deed, nor probably to perform any other strictly personal covenant, nor, as remarked by the court in *Robertson* v. *Pickrell,* can the grantee, in a contest with another, whilst relying solely upon the title conveyed to him, question *its* validity when set up by the latter. In other words, he cannot assert that the title obtained from his grantor, or through him, is sufficient for his protection, and not available to his contestant. Where both parties assert title from a common grantor, and no other source, neither can deny that such grantor had a valid title when he executed his conveyance. Thus in *Wilcoxon* v. *Osborn,* 77 Missouri, 621, it was stated that the rule was not applicable to a case where the only title asserted by the grantee was the precise title he had acquired from the grantor, nor to a case where both parties claimed from a common source, and the title was identical in that source. In that case, a county having received the purchase money for a tract of swamp land, caused a deed to be made to the purchaser by the county commissioner. On the same day the county made a loan of school funds, taking as security a mort-

gage on the land.   Subsequently the county caused the mortgage to be foreclosed.   The defendant derived title through this foreclosure.   It was held, as against the heirs of the original purchaser, that the defendant was estopped to deny the validity of the commissioner's deed.   So, in *Phelan* v. *Kelley*, 25 Wend. 389, it was held that where a person, having a possessory title to lands, dies in possession, leaving several children, his heirs-at-law, who succeed to such possession, it was not competent for one of such heirs, who had obtained the exclusive possession of the whole of the premises, to defeat a recovery, by his co-heirs, of their proportional parts or shares, by setting up a title acquired from the owners of the land; that, to avail themselves of such title, they must first, surrender possession to their co-heirs, and then bring ejectment.   And in a number of cases it has been held that where one takes by descent as a co-heir or tenant in common, he cannot show, in an action of ejectment by his co-heir, that his ancestor had no title.   *Jackson* v. *Streeter*, 5 Cowen, 529; *Proprietors of Braintree* v. *Battles*, 6 Vermont, 395.

But the consequences of treating this case as an exception to the general rule are somewhat serious.   If, as we hold, the defendant had the prior right to this land, it was under no obligation to treat with the plaintiff or pay him for the disturbance of his possession, which was unlawful as against the company.   Has it by this deed disqualified itself forever from asserting the right that it would have possessed had it not done this?   We think not.   Assuming, as some of the cases indicate, that before disputing the title of his grantor the grantee is bound to surrender his possession taken under the deed, such requirement is obviously inapplicable to a case like this, where the only possession consists in the disturbance of a water right or ditch claimed by the plaintiff, by the construction of the road across such ditch.   It could only be restored by the destruction of the road and the rebuilding of the ditch; in other words, by the surrender of possession under the deed, and a repudiation of the entire transaction, when it is admitted that the defendant could set up its prior title and proceed against the plaintiff as a trespasser.   But

this would be a useless and expensive formality; and we think the rule that forbids a tenant from disputing his landlord's title without first surrendering his possession has no application to a case like this. It may be said in general that the doctrine of estoppel exists only where there is an obligation to restore the possession of the land, upon certain contingencies, such, for instance, as exist between landlord and tenant, or mortgagor and mortgagee. In such cases the occupant is considered to have pledged his faith to return the possession of the land which he occupies, and will not be permitted to do anything to impair the title of him from whom he has received it. 3 Wash. Real Property, 98; *Gardner* v. *Greene*, 5 R. I. 104; *Osterhout* v. *Shoemaker*, 3 Hill, 513.

In this case the defendant not only did not agree to resurrender possession to the plaintiff, but it accepted the deed with this covenant or condition, for which it received no consideration, and we do not consider it a breach of good faith upon the part of the defendant to set up this fact, nor ought it to be put in a worse position by having accepted this deed and paid $250 therefor, than it would have occupied had it refused altogether to treat with the plaintiff. The deed was evidently delivered and received by these parties under a misapprehension of their legal rights, and it would be manifestly unjust to hold the defendant forever estopped from asserting the invalidity of the covenant into which it had inadvertently entered.

The judgment of the court below must be

*Affirmed.*